**EXHIBIT A**

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**
01/29/2008
CT Log Number 513028729

**TO:** Stephen Long, General Counsel
C. R. Bard, Inc.
730 Central Avenue
New Providence, NJ 07974

RECEIVED
JAN 3 0 2008
C.R. BARD, INC.
LAW DEPT

**RE:** **Process Served in California**

**FOR:** Davol Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Larry Palmer, etc., and Loretta Palmer, etc., Pltfs. vs. Davol, Inc., etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), Complaint, Stipulation Form |
| **COURT/AGENCY:** | Superior Court, County of Orange, CA<br>Case # 30200700100114 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Failure to warn of defective Bard Composix Kugel Mesh Hernia Patch - Seeking Injunctive Relief forever enjoining defendants from the acts of unfair competition and untrue and misleading business practices, and ordering defendants pay restitution to plaintiff |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/28/2008 at 14:40 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Ramon Rossi Lopez<br>Lopez McHugh LLP<br>100 Bayview Circle, North Tower<br>Ste. 5600<br>Newport Beach, CA 92660<br>949-737-1501 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Standard Overnight , 791487537317 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:** | C T Corporation System<br>Nancy Flores<br>818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |



Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

1-28-08
3:40 pm

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 11 2007

ALAN SLATER, Clerk of the Court

BY: Y. MEJIA, DEPUTY

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
See Defendant Attachment

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
LARRY PALMER, an individual, and LORETTA PALMER, an individual, and as husband and wife,

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Orange County Superior Court
Central Justice Center
700 Civic Center Drive, West, Santa Ana, CA 92701

CASE NUMBER: *(Número del Caso):* 30-2007 00100114

JUDGE DENNIS S. CHOATE
DEPT. C20

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ramon Rossi Lopez, LOPEZ McHUGH LLP 949.737.1501
100 Bayview Circle, North Tower, Ste. 5600, Newport Beach, CA 92660

DATE: DEC 11 2007 *(Fecha)*

Clerk, by YOLANDA MEJIA *(Secretario)* ALAN SLATER, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Davol, Inc.

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc. www.USCourtForms.com

SUM-200(A)

| SHORT TITLE: Palmer, et al v. Davol, et al | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☒ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

DAVOL, INC., a corporation, BARD DEVICES, INC., a corporation, and C.R. BARD, Inc., a corporation, COLLEEN L. COLEMAN, M.D., an individual, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, a corporation, and DOES 1 through 300, inclusive,



Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

Ramon R. Lopez, Bar No. 86361
Christina Anne Fountain, Bar No. 111220
Troy A. Brenes, Bar No. 249776
**LOPEZ McHUGH LLP**
100 Bayview Circle,
Suite 5600, North Tower
Newport Beach, CA 92660
Telephone: (949) 737-1501
Facsimile: (949) 737-1504
rlopez@lopeamchugh.com
cfountain@lopezmchugh.com
tbrenes@lopezmchugh.com

Attorneys for Plaintiffs
LARRY PALMER and LORETTA PALMER

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 11 2007

ALAN SLATER, Clerk of the Court

BY: Y. MEJIA, DEPUTY

**SUPERIOR COURT OF CALIFORNIA**

**FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

| | |
|---|---|
| LARRY PALMER, an individual, and LORETTA PALMER, an individual, and as husband and wife,<br><br>*Plaintiff,*<br><br>vs.<br><br>DAVOL, INC., a corporation, BARD DEVICES, INC., a corporation, and C.R. BARD, Inc., a corporation, COLLEEN L. COLEMAN, M.D., an individual, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, a corporation, and DOES 1 through 300, inclusive,<br><br>*Defendants.* | Case No. 30-2007 00100114<br><br>JUDGE DENNIS S. CHOATE<br>DEPT. C23<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. NEGLIGENCE**<br>**2. STRICT PRODUCTS LIABILITY-FAILURE TO WARN**<br>**3. STRICT PRODUCTS LIABILITY – DESIGN DEFECT**<br>**4. STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**<br>**5. BREACH OF EXPRESS WARRANTY**<br>**6. BREACH OF IMPLIED WARRANTY**<br>**7. DECEIT BY CONCEALMENT**<br>**8. DECEIT BY INTENTIONAL MISREPRESENTATION**<br>**9. FRAUD AND DECEIT**<br>**10. NEGLIGENT MISREPRESENTATION**<br>**11. VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17200, ET SEQ.**<br>**12. VIOLATION *OF BUSINESS AND PROFESSIONS CODE* §§17500**<br>**13. VIOLATION OF *CIVIL CODE* §§ 1750 ET SEQ.**<br>**14. MEDICAL NEGLIGENCE**<br>**15. LOSS OF CONSORTIUM**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, LARRY PALMER and LORETTA PALMER, individually and as husband and wife, make the following allegations against Defendants DAVOL, INC, BARD DEVICES, INC., and C.R. BARD, INC., COLLEEN L. COLEMAN, M.D., an individual, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, a corporation, and DOES 1 through 300, inclusive.

**NATURE OF THE CASE**

1. Plaintiff LARRY PALMER suffered serious and potentially life threatening injuries resulting from his implantation with a defective and unreasonably dangerous product known as the Bard® Composix® Kugel® Mesh Hernia Patch, and from the negligent medical care he received during that surgery.

**PARTIES**

**Plaintiffs**

2. Plaintiff LARRY PALMER is, and at all times relevant was, a citizen and resident of the city of Norco, county of Riverside, state of California. Plaintiff brings this action against Defendants for the personal injuries he suffered as a result of being implanted with the Kugel Patch, and as a result of receiving negligent medical care. Plaintiff believes and alleges, that the Patch is and was designed, manufactured, fabricated, marketed, tested for safety, advertised, distributed, labeled, and sold by Defendants identified in this Complaint.

3. Plaintiff LORETTA PALMER is an individual and at all times relevant is and was a citizen of California residing in Riverside County, California. Plaintiffs LORETTA PALMER and LARRY PALMER were and are, at all times relevant to this action, legally married as husband and wife. LORETTA PALMER brings this action for, *inter alia*, the loss of consortium, comfort, and society she has suffered due to the personal injuries suffered by her husband LARRY PALMER.

**Defendants**

4. Upon information and belief, Defendant DAVOL, INC. (hereinafter "DAVOL") is, and at all times relevant to this action was a wholly owned subsidiary of BARD DEVICES, INC, which is a wholly owned subsidiary of C.R. BARD, INC. At all times relevant times, Davol is and was a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920. DAVOL, at all times relevant to this action, through its officers, directors, agents, servants, employees, and representatives, designed, manufactured, tested, analyzed, distributed, recommended, merchandized, advertised, promoted, supplied and sold to distributors, physicians, hospitals, and medical practitioners, the Kugel® Patch to be surgically implanted in patients throughout the United States, including the state of California.

5. Defendant BARD DEVICES, INC. is, and at all times relevant was, a wholly owned subsidiary of C.R. BARD, INC., and is the corporate parent/stockholder of DAVOL. BARD DEVICES is a corporation duly organized and existing under the laws of the state of Delaware. BARD DEVICES, through the officers, directors, agents, servants, employees, and representatives of its subsidiary, DAVOL, at all times relevant to this action, designed, manufactured, fabricated tested, marketed, advertised, promoted, distributed and sold to distributors, physicians, hospitals, and medical practitioners, the Kugel® Patch to be surgically implanted in patients throughout the United States, including the state of California.

6. C.R. BARD, INC. is the corporate parent/stockholder of DAVOL and BARD DEVICES. C.R. BARD is a corporation duly organized and existing under the laws of the state of Delaware. C.R.

BARD, through its and its subsidiary officers, directors, agents, servants, employees, and representatives, at all times relevant, designed, manufactured, tested, fabricated, marketed, advertised, promoted, distributed, and sold to distributors, physicians, hospitals, and medical practitioners, the Kugel® Patch to be surgically implanted in patients throughout the United States, including the state of California.

7. Defendant, COLLEEN L. COLEMAN, M.D., is a general surgeon with her principal place of business at 1401 Avocado Avenue, Suite 303, Newport Beach California. Defendant, COLLEEN L. COLEMAN, M.D., is licensed to perform surgery, treatment, care and prescribe medications in the state of California. COLLEEN L. COLEMAN, M.D., performed the ventral incisional hernia repair surgery on October 29, 2003, in which a Kugel® Patch was implanted into Plaintiff LARRY PALMER.

8. Defendant, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, a corporation, is a corporation with its principal place of business at One Hoag Drive, Newport Beach California. Defendant, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, is a licensed healthcare provider, licensed in the state of California to perform surgeries, administer care and treatment, and prepare distribute, combine, formulate, and administer medications to Plaintiff, LARRY PALMER, by way of medical procedure and prescription. Defendant, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, through its officers, directors, agents, servants, employees, and representatives performed the ventral incisional hernia repair surgery on October 29, 2003, in which a Kugel® Patch was implanted into Plaintiff LARRY PALMER.

9. The true names and capacities, whether individual, corporate, associate or otherwise, of

other certain developers, formulators, manufacturers, validators, advertisers, promoters, distributors, and/or sellers and/or their alter egos are sued herein as DOES 1 through 150, inclusive, in that the identity of said defendants are presently unknown to Plaintiffs who therefore sue these Defendants by said fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to show the true names and capacities of said DOE defendants when their identities have been ascertained.

10. Plaintiffs are informed and believe, and thereupon allege, that defendants DOES 1 through 150 were authorized to and did, conduct business in the County of Newport and/or the State of California. Plaintiffs are further informed and believe, and thereupon allege, that defendants DOES 1 through 150 were and/or are, in some way or manner, responsible for and liable to Plaintiffs for the events, happenings, and damages alleged in this Complaint.

11. The true names and capacities, whether individual, corporate, associate or otherwise, of other certain hospitals, doctors, nurses, or other healthcare providers sued herein as DOES 151 through 300, inclusive, in that the identity of said defendants are presently unknown to Plaintiffs, who therefore sue these Defendants by said fictitious names. Plaintiffs will seek leave of Court to amend this Complaint, to show the true names and capacities of said DOE defendants when their identities have been ascertained. Plaintiffs are informed and believe, and thereupon allege, that defendants DOES 151 through 300 were licensed healthcare providers, licensed to practice medicine in the State of California. Plaintiffs are further informed and believe, and thereupon allege, that defendants DOES 151 through 300 were and/or are, in some way or manner, responsible for and liable to Plaintiffs for the events, happenings, and damages alleged in this Complaint.

12. Defendants COLLEEN L. COLEMAN, M.D., HOAG MEMORIAL HOSPITAL

PRESBYTERIAN, and DOES 151 through 300 are healthcare providers.

13. Plaintiffs are informed and believe, and thereupon allege, that, at all times relevant to this action each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, predecessor in-interest, alter ego, joint venturer, and/or other representative of each of the remaining defendants and was acting in such capacity in undertaking the acts, conduct, and omissions alleged in this Complaint.

14. Plaintiffs allege that the corporate form of Defendants, including Does 1 through 300, was a sham and should be disregarded because there exists and, at all times herein mentioned, there existed a unity of interest in ownership between and among these defendants such that any individuality and separateness between theses defendants has ceased and/or never existed; in that these defendants, and each of them are the alter-egos of one another and exerted direction and control over each other. Adherence to the fiction of a separate and independent existence of Defendants, as separate entities distinct from one another will permit an abuse of the corporate privilege, sanction a fraud upon plaintiff and other recipients of the Kugel® Patch, and promote injustice. Defendants, and each of them, encouraged, directed, condoned and ratified the negligent, willful, intentional, and wrongful acts, omissions, and conduct of each and all Defendants.

15. The following facts regarding the operations of the corporate Defendants support disregard of the corporate fiction: (1) corporate formalities for all of the wholly-owned subsidiaries were ignored and were not observed; (2) property was not kept separate and apart between the parent corporations and the wholly-owned subsidiaries; (3) direct deposits were made into bank accounts of subsidiaries which were controlled by the parent corporation and consolidated into the parent's deposit accounts; (4) the parent corporation at all times maintained 100% financial interest in all subsidiaries

and maintained control over the subsidiaries on an operational basis both by appointing the chief operation officer of each subsidiary and by top down management; (5) the subsidiaries are used or established for the business purposes of the parent, and are the means by which the parent corporation conducted its business; and (6) the subsidiary facilities were not reasonably capitalized in light of the nature and risk of their business.

16. Additionally, Plaintiffs allege that at all relevant times, the corporate Defendants have operated as a single business enterprise to achieve a common business purpose. Parent corporations and any wholly-owned subsidiaries were not operated as separate and individual entities, but rather integrated and commingled their resources to achieve a common business purpose and conducted their operations as follows: (1) a single and common board of directors and the same members existed between the parent and subsidiaries; (2) the same centralized and consolidated accounting and financial reporting was used by both the parent and the subsidiaries for both internal purposes and external purposes such as for the Internal Revenue Services and annual financial reports; (3) parent corporations paid the wages of all employees, agents, and representatives of the subsidiary corporation; (4) common business names are and were used by the parent and subsidiaries and the parent corporations' capital and credit lines are and were used to fund and operate the subsidiaries.

17. All of the subsidiaries of Defendant parent corporations were established simply as shells, instrumentalities, and conduits through which the parent conducted its business, and therefore, the corporate fiction must be disregarded to prevent fraud or injustice. Each constituent corporation may be held liable for the obligations incurred by the other component entities since these defendants operated as a single business enterprise to achieve a common business purpose.

18. The Defendant parent corporations have intentionally operated all subsidiaries in a manner that left the subsidiaries without assets sufficient to satisfy the claims of the plaintiff and other claimants by taking complete control and possession of the subsidiaries' revenues and receivables. All monies received as proceeds in the sales of products by the subsidiary corporations were maintained and received by the defendant parent corporations to fund their own operations and were not maintained at the subsidiary level.

19. At all times herein mentioned the defendants, and each of them, were engaged in the business of or were successors in interest to, entities engaged in the business of researching, designing, manufacturing, fabricating, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising for sale, and selling the Kugel® Patch, which was implanted into Plaintiff LARRY PALMER.

**JURISDICTION AND VENUE**

20. This Court has jurisdiction over all causes of action alleged in this Complaint pursuant to the California Constitution, Article VI, § 10.

21. Venue is proper in this Court, pursuant to *Code of Civil Procedure* § 395, as Defendants COLLEEN L. COLEMAN, M.D., and HOAG MEMORIAL HOSPITAL PRESBYTERIAN have their principal places of business in the city of Newport, county of Orange, state of California.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

22. Plaintiff LARRY PALMER suffered serious and potentially life threatening injuries resulting from his surgical implantation with a defective and unreasonably dangerous product known as the Bard® Composix® Kugel® Mesh Hernia Patch, and from the negligent medical care he received

during that surgery.

23. On October 29, 2003, Plaintiff LARRY PALMER underwent a ventral incisional hernia repair procedure at HOAG MEMORIAL HOSPITAL PRESBYTERIAN, during which a Bard® Composix® Kugel® Hernia Patch was implanted into his abdomen. Defendants COLLEEN L. COLEMAN, M.D., HOAG MEMORIAL HOSPITAL PRESBYTERIAN, and DOES 151 through 300, inclusive, and each of them, performed the procedure.

24. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, through their officers, directors, agents, servants, employees, representatives, and/or parent or subsidiary corporations, designed, manufactured, fabricated, tested, distributed, marketed, advertised, sold, and distributed, and placed into the stream of commerce the above-mentioned Kugel® Patch. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, designed, manufactured, fabricated, tested, distributed, recommended, advertised, promoted, supplied, sold, and placed the Kugel® Patch into the stream of commerce to be used by surgeons for hernia repair surgeries and was further represented by same to be an appropriate, safe, suitable product for such purposes.

25. The Kugel® Patch is a prosthetic device used primarily to repair ventral and inguinal hernias. The Patch is composed of two sides. One side is constructed of a double layer of *monofilament polypropylene* (mesh). This double layer creates a positioning pocket, in which a *polymer "memory recoil ring"* is placed. On the other side is a barrier of expanded polytetrafluoroethylene (ePTFE). The memory recoil ring allows the Patch to swing open and maintain its shape during placement.

26. In October 2000, Defendants, C.R. BARD and BARD DEVICES through their DAVOL subsidiary submitted a 510(k) notification of intent to market the Kugel® Patch. The Federal Drug Administration (hereinafter the "FDA") approved the Kugel® Patch for marketing as a Class II medical device in January 2001.

27. Immediately after the Kugel® Patch was placed on the market, Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, became aware and obtained knowledge that said product was defective and causing serious injury to those persons in whom it had been implanted. Said Defendants knowingly, willfully, and intentionally concealed and/or misrepresented their knowledge of the defective and unreasonably dangerous condition of the Kugel® Patch from Plaintiff, the healthcare industry, and other American consumers.

28. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, were required to conduct post market surveys as part of the device validation process. On or about January 2006, the FDA inspected a Kugel® Patch manufacturing facility belonging to Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them. This inspection resulted in the FDA issuing an Establishment Inspection Report ("EIR") in 2006. The 2006 EIR found that the post market survey validation process of the device was incomplete and failed to include all data from physicians surveyed during this time, including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of physician surveyors were actively concealed by Defendants from Plaintiff, the healthcare community, and other American consumers.

29. No later than September 2004, Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, became aware and obtained knowledge of

serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the

manufacturing plant, said Defendants found the corrective measures to be ineffective and the process still not in control. These Defendants were aware that these weld issues had existed from the time the Kugel® Patch was placed on the market and all current sizes and lots suffered from this dangerous defect. This information was intentionally withheld at this time from Plaintiff, the healthcare community, the FDA, and other American consumers.

30. According to the 2006 EIR, DAVOL corporate executives informed the FDA that the spring and summer period of 2005 showed a marked increase in the number of adverse event complaints regarding the Kugel® Patch and the memory recoil ring. In fact, FDA records indicate that as of August 2005, Defendants had received at least the following adverse event reports: 17 instances of ring breaks, at least one of which resulted in death; two unexplained bowel perforations; four ring breaks during implant procedures; five cases of device deformity; and eight instances of bowel adhesions to the patch. Notwithstanding their knowledge of increasing complaints and complications associated with the Kugel® Patch, Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to cease distribution or notify American consumers of the severity of complications associated with the unreasonably dangerous and defective Kugel® Patch until December 2005.

31. Even then, Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, limited the December 2005 distribution hold and recall to "Extra Large" sized Kugel® Patches, despite being aware of substantial numbers of similar serious adverse events associated with nonrecalled Kugel® Patch sizes; and that all Kugel® Patch sizes were

manufactured, designed, fabricated, marketed, advertised, and intended for use in a similar fashion, and therefore, subject to the same above-mentioned health risks and defects, as the recalled Kugel® Patch sizes. Defendants, further, admittedly violated federal law by not timely notifying the FDA of the December 2005 recall.

32. The FDA classified the December 2005 recall as a Class 1 recall. Class 1 recalls are the most serious type of recalls and involve situations in which the FDA believes there is a reasonable probability that use of the product will cause serious injury or death.

33. The basis for the recall is that the memory recoil ring that opens the Kugel® Patch can break under stress or pressure, including the stress of implantation. The Kugel® Patch is also known to become deformed and migrate within the body. These defects are known to cause severe injuries including, *inter alia*, perforation of the bowel, ring migration through the abdominal wall, abnormal chronic enteric fistula, infection, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, and adhesions between the bowel and the Patch. The following conditions are symptomatic of the injuries herein mentioned: fever, unexplained or persistent abdominal tenderness, vomiting, abnormal bowel movements, tenderness at implant site, abdominal distention, or other unusual symptoms.

34. As previously mentioned, the FDA conducted investigations of a Cranston, Rhode Island, Kugel® Patch manufacturing facility owned, managed, and operated by Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them. The subsequently issued 2006 EIR, determined, among other things, that said Defendants:

a. had excluded memory recoil ring failure events their complication database, reports, and recall notices, which should have been included;

b. misidentified numerous Kugel® Patch complication events;

c. failed to apply product quality hold and release procedures on a timely basis;

d. failed to properly follow procedures for conducting design validation review;

e. failed to identify all actions necessary to correct and prevent recurrence of further ring break and Kugel® patch complications; specifically, Defendant's failed to provide justification for including only Extra Large Kugel® Patch sizes in the December 2005 recall;

f. failed to provide all reasonably known information regarding numerous Kugel® Patch complaints, specifically noting that company officials had "understated" in several reports to the FDA the potential severity of device-related injuries, including three reports involving injuries and one report involving a possible device-related death;

g. failed to perform strength testing on memory recoil rings for all sizes of Kugel® Patches before putting them into the stream of commerce;

h. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for memory recoil ring failures and Kugel patch complaints resulting in numerous inconsistencies and errors in the raw data, actual complaints, and electronic databases.

35. On March 24, 2006, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, expanded the recall to include the following Kugel® Patches: 1) "Oval" patches, 2) "Large Circle" patches, and 3) "Large Oval" patches.

36. On January 10, 2007, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, each of them, expanded the recall for the second time, to include further production lots of the defective and unreasonably dangerous Kugel® patch.

37. The FDA inspected the Cranston, Rhode Island, Kugel® Patch manufacturing facility owned, managed, and operated by Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, for the second time, from January 23 through March 13, 2007. On April 24, 2007, the FDA issued a "Warning Letter" to Defendants, notifying them that the inspection had ***again*** uncovered "serious violations of the law" in regards to the quality assurance program used in manufacture of Kugel® Patches. These violations were of such a degree and nature that the FDA determined the Kugel® Patches to be "adulterated" under section 501(h) of the Federal Food, Drug and Cosmetic Act. The warning letter specifically mentions, *inter alia*, the following violations:

a. Failure to establish and maintain adequate corrective and preventative action procedures which ensure identification of actions needed to correct and prevent the recurrence of nonconforming product and other quality problems;

b. Failure to establish adequate management controls to ensure that an effective quality system has been established and maintained;

c. Failure to document the implementation of corrective and preventative actions;

d. Failure to validate your device's design to ensure that the device conforms to defined user needs and intended uses;

e. Failure of your firm to establish procedures to completely address the identification, documentation, evaluation, segregation, disposition and investigation of non-conforming product.

The Letter notes that as an example of the fifth enumerated violation, Defendant's "quality system failures" resulted in the delayed recall of the defective Kugel® Patches.

38. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, continue to fail to recall some sizes of the Kugel® Patch, despite being aware of substantial numbers of serious adverse health events associated with nonrecalled Kugel® Patch sizes, and that all Kugel® Patch sizes are manufactured, designed, fabricated, marketed, advertised, and intended for use in a similar fashion, and therefore, subject to the same above-mentioned health risks and defects.

39. Neither Plaintiff LARRY PALMER or his healthcare providers were aware of the defective and unreasonably dangerous condition of the Kugel® Patch or that this unreasonably defective condition was the cause of Mr. PALMER'S injuries until sometime after Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, chose to finally inform the general public of the defective nature of the Kugel® Patches and the subsequent recalls.

40. Sometime after the 2003 hernia repair surgery, Plaintiff LARRY PALMER began experiencing severe abdominal pain, nausea, fever, and sepsis symptoms. His condition worsened progressively, and by September 13, 2006, hospitalization and surgery were necessary. The surgery was performed at Riverside Community Hospital in Riverside, California. Physicians performed an emergency exploratory laparotomy and found that, *inter alia*, the Kugel® Patch had become deformed, perforated LARRY PALMER'S bowel, and caused infection, intestinal fistulae, sepsis, dense scarring, and his bowel in this area to become "matted together". Physicians removed the infected Kugel® Patch, attempted to free the "matted bowel," but were unable to do so, and performed multiple surgical procedures to repair and/or treat his perforated bowel, fistulae, and sepsis.

41. Plaintiff is informed and believes, and thereupon alleges, that his injuries were a proximate result of his being implanted with the defective and unreasonably dangerous Kugel® Patch designed, manufactured, fabricated, tested, distributed, marketed, advertised, sold, and distributed by

Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, and/or by the negligent medical care he received from Defendants COLLEEN L. COLEMAN, M.D., HOAG MEMORIAL HOSPITAL PRESBYTERIAN, and DOES 151 through 300, inclusive, and each of them. The physical injuries suffered by Plaintiff LARRY PALMER were of the same nature and extent as the serious adverse events Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew to be associated with the Kugel® Patch.

42. Plaintiff LARRY PALMER'S medical condition was and has been continuously monitored by his physicians and other healthcare providers to observe and screen for exacerbation of his injured bowels and other health risks associated with Plaintiff's implantation with a Kugel® Patch.

43. Plaintiff LARRY PALMER will require continuous monitoring of his Kugel® Patch related injuries for the remainder of his life. His physical injuries, proximately caused by his implantation with a Kugel® Patch, are severe, life threatening, and permanent, and have adversely impacted the quality of his life and the life of his family.

44. Plaintiff has unnecessarily, but for the implantation of the defective Kugel® Patch and/or the negligent medical care he received, suffered serious and life threatening physical injuries, severe emotional and mental injuries in coping with his physical injuries, and has incurred and expended significant amounts for the medical care, hospitalizations, and medications, required to treat and care for his Kugel® Patch related injuries and will continue to do so long into the future.

45. As a direct and proximate cause of Defendants' conduct and the defective Kugel® Patch, Plaintiff LORETTA PALMER has suffered, and will continue to suffer, loss of consortium.

46. At all times relevant, Plaintiff LORETTA PALMER was and continues to be married to LARRY PALMER.

47. Plaintiffs are informed and believe, and thereupon allege that Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, failed to comply with FDA 510(k) application and reporting requirements.

48. Plaintiffs are informed and believe, and thereupon allege that Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew, or in the exercise of reasonable care should have known, prior to the recalls of the Kugel® Patch and prior to its implantation into Plaintiff, that the aforesaid products were of such a nature that they were not properly designed, manufactured, fabricated, tested, labeled, marketed, sold, distributed, monitored, provided with proper warnings, were not suitable for the purpose they were intended, and were unreasonably likely to injure users of the products.

49. Plaintiffs are informed and believe, and thereupon allege that Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, did not timely apprise Plaintiffs, the healthcare industry, or other American consumers of the defective and unreasonably dangerous condition of the Kugel® Patch, despite Defendant's knowledge of said condition.

50. Plaintiffs are informed and believe, and thereupon allege that Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, were aware that the non-recalled Kugel® Patch sizes were uniformly subject to the same complications, risks of failure,

and defects as the recalled Kugel® Patch sizes.

51. Defendants' conduct, as described in the preceding paragraphs, amounts to conduct purposefully committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety Plaintiffs.

## FRUADULENT CONCEALMENT

52. Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by defendants when they had a duty to disclose those facts. They have kept Plaintiffs ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on Plaintiffs' part, for the purpose of obtaining delay on plaintiffs' part in filing on their causes of action. Defendants' fraudulent concealment did result in such delay.

53. Plaintiffs could not reasonably have discovered the claims made herein until shortly before filing this complaint.

54. The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch that was implanted in Plaintiff LARRY PALMER, but instead they concealed them. As a result, Defendants are estopped from relying on any statute of limitations defenses.

///

///

///

## FIRST CAUSE OF ACTION

## NEGLIGENCE

**(By Plaintiff LARRY PALMER Against Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

55. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

56. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, had a duty to exercise reasonable and prudent care in the design, manufacture, fabrication, testing, application for FDA approval, marketing, advertisement, promotion,, sale and distribution, including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

57. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, were negligent in that they designed, manufactured, fabricated, and sold and distributed a defective product known as the Kugel® Patch, knew and were aware of the defects inherent in the product, failed to act in a reasonably prudent manner in marketing the product, and failed to provide adequate warnings of the product's defects.

58. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, breached their duty of reasonable care and failed to exercise ordinary care in the design, development, manufacture, fabrication, marketing, distribution, packaging, and sale, of the Kugel® Patch into interstate commerce, in that Defendants knew and had reason to know that implantation of the Kugel® Patch into a consumer created a significant risk of his or her suffering unreasonably dangerous health related side effects, including, but not limited to: perforation of the

intestines, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowels and the Patch, and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the Kugel® Patch, the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

59. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, acted negligently, *inter alia,* in the following acts and omissions:

a. Designing, manufacturing, fabricating, promoting, marketing, creating, selling, and distributing the Kugel® Patch without thorough and adequate pre and post-market testing of the product;

b. Designing, manufacturing, fabricating, promoting, marketing, creating, selling, and distributing the Kugel® Patch while negligently and intentionally concealing and failing to disclose evidence regarding use of the Kugel® Patch, which demonstrated the risk of serious harm associated with the use of said product;

c. Failure to undertake sufficient tests to determine whether or not Kugel® Patch was safe for its intended use,

d. Failure to disclose and warn regulatory agencies, the medical community, and consumers that Defendants knew and had reason to know that Kugel® Patch was indeed unreasonably unsafe and unfit for use by reason of

product's defect and risk of harm as discussed herein;

e. Failing to warn plaintiff, the healthcare community, and consumers that the product's risk of harm was unreasonable and that there were safer and effective alternative hernia repair treatments available to plaintiff and other consumers.

f. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Kugel® Patch;

g. Advertising, marketing and recommending the use of the Kugel® Patch, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Kugel® Patch;

h. Representing that the Kugel® Patch was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i. Failing to disclose to and inform the medical community and consumers that other forms of safer and effective treatments were available for use to treat the conditions for which Kugel® Patch was manufactured;

j. Continuing manufacture and sale of the Kugel® Patch with the knowledge that said product was dangerous and not reasonably safe, and failing to comply with FDA regulations and policy;

k. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Kugel® Patch so as to avoid the

risk of serious harm associated with the use of the Kugel® Patch as a hernia repair device.

l. Advertising, marketing, promoting and selling the Kugel® Patch for uses other than as approved and indicated in the product's label;

m. Failing to design and manufacture the Kugel® Patch so as to ensure the device was at least as safe and effective as other hernia repair devices on the market;

n. Failing to ensure the product was accompanied by proper and accurate warnings about possible adverse side effects associated with the use of the Kugel® Patch and that the Kugel® Patch had a known high risk of suffering a memory recoil ring break and the associated injuries described in this Complaint, which could be life-threatening and permanent;

o. Failing to conduct adequate testing, including post-marketing surveillance to determine the safety of the Kugel® Patch; and

p. Failing to establish an adequate quality assurance program used in manufacture of the Kugel® Patch.

60. Defendants knew and should have known that it was foreseeable that consumers such as plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacture, marketing, labeling, and sale of the Kugel® Patch.

61. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, negligence was the proximate cause of the injuries, harm, and economic loss that Plaintiffs have suffered and will continue to suffer into the future.

62. As a result of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, negligence and Plaintiff's implantation with the defective and unreasonably dangerous Kugel® Patch, Plaintiff suffered severe physical injuries, including without limitation, bowel perforation, infection, recurrent hernia, other bowel injury, major surgery to remove said patch, physical disfigurement, and severe and permanent injury.

63. As a further result of the foregoing defects in the Product, Plaintiff suffered other consequential damages.

64. As a further proximate result of the defective and unreasonably dangerous condition of the Kugel® Patch, Plaintiff was required to employ the services of numerous healthcare professionals and incurred associated substantial costs and expenses of former and ongoing medical treatments.

65. Plaintiff is informed and believes, and thereon alleges, that he will require the further services of these and other healthcare professionals in the future, all as a result of the injuries he sustained due to the defects in the Product, which will entail additional associated costs.

66. As a further result of the defects in the Product, Plaintiff has been unable to engage in his professional activities and, as a result, has lost substantial income and wages. Additionally, Plaintiff is informed and believes, and thereon alleges, that he has lost her ability to earn wages and will be unable to engage in her professional activities in the same capacity in the future and, as a result, will lose substantial income and wages in the future.

///

**SECOND CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY - FAILURE TO WARN**

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

67. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

68. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, designed, tested, applied for FDA approval, conducted clinical studies, manufactured, fabricated, marketed, sold and distributed the Kugel® Patch into the stream of commerce and in the course of same, directly advertised and marketed the Kugel® Patch to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the Kugel® Patch.

69. At the time the Kugel® Patch was designed, submitted for FDA approval, clinically studied, manufactured, fabricated, marketed, sold and distributed into the stream of commerce, and more specifically at the time Plaintiff LARRY PALMER received the product, said patches were defective and unreasonably dangerous when put to their intended and reasonably anticipated use, namely for hernia repair surgery. Defendants failed to adequately warn of the Kugel® Patch's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the Product.

70. Prior to the manufacture, distribution into the stream of commerce, and any recall of the Kugel® Patch, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150,

inclusive, and each of them, knew or should have known of the risk of substantial and potentially life threatening danger associated with the intended and reasonably foreseeable use of the Kugel® Patch. This known and knowable danger consisted of, a high rate of malfunction of the Kugel® Patch, leading to, *inter alia*, bowel perforation, chronic intestinal fistula, severe abdominal pain, fever, sepsis, infection, dense internal scarring, recurrent hernia, and surgical repair procedures. Yet, Defendants negligently, knowingly, willfully, intentionally, and wrongfully failed to provide adequate warnings to Plaintiff, the healthcare community, the FDA, or other American consumers, of this known and reasonably scientifically knowable danger.

71. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to provide any warning, labels, or instructions regarding the dangerous propensities of the Kugel® Patch mentioned herein that were known or reasonably knowable at the time of distribution. Said Defendants also failed to provide timely updated warnings, labels, or instructions regarding the dangerous propensities of the Kugel® Patch as they became known or knowable after distribution. In violation of their duty to warn of adverse side effects, these Defendants continue to fail to provide any warnings regarding the non-recalled variety of Kugel® Patches and continue to fail to provide true and accurate warnings regarding the health risks associated with the recalled Kugel® Patches.

72. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to timely and reasonably warn of material facts regarding the safety and efficacy of the Kugel® Patch; no medical care provider would have used — and no consumer would have accepted implantation with — the Kugel® Patch, had those facts been made known to the

prescribing healthcare providers and/or the consumers of the Kugel® Patch.

73. The Kugel® Patch warnings, labels, and instructions provided by Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, at all time relevant to this action, are and were inaccurate, intentionally misleading, and misinform and misrepresent the risks and benefits and lack of safety and efficacy associated with the Kugel® Patch.

74. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, failed to perform, establish or otherwise facilitate adequate testing and/or quality assurance programs; either of which would have shown that the Kugel® Patch posed serious and potential life threatening adverse effects and complications.

75. The health risks associated with the Kugel® Patch as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

76. The Kugel® Patch, which was designed, manufactured, fabricated, marketed, sold and distributed the into the stream of commerce by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

77. On October 29, 2003 when Plaintiff LARRY PALMER was implanted with the Kugel® Patch, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to provide any warnings, instructions, or labels regarding the severity and extent of health risks posed by the Kugel® Patch, as discussed herein.

78. Plaintiff LARRY PALMER did not know of the risk of substantial danger associated with the intended and foreseeable use of the Kugel® Patch as described herein until the year 2007.

79. Plaintiff LARRY PALMER used the Kugel® Patch in a normal, customary, intended, and foreseeable manner, namely for a hernia repair surgery.

80. The defective and dangerous condition of the Kugel® Patches, including the one implanted into Plaintiff, existed at the time the Kugel® Patches were designed, manufactured, fabricated, distributed, and delivered by Defendants to distributors and/or healthcare professionals or organizations. At the time Plaintiff had his hernia repair surgery in which the Kugel® Patch was implanted, the Kugel® Patch was in the same condition as when it was manufactured, fabricated, inspected, distributed, labeled, and marketed by Defendants.

81. As a proximate result of foregoing defects in the Product and failure to warn of said defects, Plaintiff suffered and will continue to suffer, the injuries and damages set forth in this Complaint.

**THIRD CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY –DESIGN DEFECT**

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

82. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

83. At all times relevant to this action, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, designed, tested, applied for FDA approval, conducted clinical studies, manufactured, fabricated, marketed, sold and distributed into the stream of commerce the Kugel® Patch, which was recommended and implanted into Plaintiff LARRY PALMER.

84. The Kugel® Patch was expected to, and did, reach the intended consumers, handlers, and persons coming in contact with the product without substantial change in the condition in which the product was designed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them.

85. At all times relevant to this action, the Kugel® Patch was designed, manufactured, fabricated, tested, labeled, advertised, promoted, marketed, sold, and distributed into the stream of commerce marketed in a defective and unreasonably dangerous condition, for use by Plaintiff and all other American consumers.

86. The Kugel® Patch, as designed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by Defendants was inherently defective in design manufacture and fabrication, in that when it left the hands of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, the foreseeable risks of harm caused by said product exceeded its claimed benefits.

87. The Kugel® Patch, as designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, was defective in design and formulation, because when it left the hands of said Defendants, the product was unreasonably dangerous and was also more dangerous than expected by the ordinary consumer.

88. At all times relevant to this action, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew and had reason to know that the Kugel® Patch was inherently defective and unreasonably dangerous as designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by them and when used by Plaintiff the healthcare community, and other American consumers in the intended and reasonably foreseeable manner.

89. Plaintiff used the product for the purpose intended by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, and in a manner normally intended to be used , namely for hernia repair surgery. Defendants had a duty to design, create, manufacture, and fabricate a product that was not unreasonably dangerous for its normal, common, intended use.

90. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce a defective product that created an unreasonable risk of serious harm to the health, safety, and well being of Plaintiff and other American consumers. Defendants are therefore strictly liable for the injuries and damages sustained by Plaintiff proximately caused by his use of the Kugel® Patch.

91. Neither Plaintiff, nor his healthcare providers could have, by the exercise of reasonable care, discovered the Kugel® Patch's defective condition or perceived its unreasonable dangers prior to his ingestion of the product.

92. The Kugel® Patch, as designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by

Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, was defective due to the product's inadequate warnings and instructions. Said Defendants knew, and should have known and adequately warned that the Kugel® Patch created a risk of serious and dangerous side effects, including, but not limited to, perforation of the intestines, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowel and the Patch, and other serious and severe personal injuries, including death, some of which are permanent in nature.

93. Notwithstanding their knowledge of the inherently defective and unreasonably dangerous condition of the product, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to adequately warn the Plaintiff, the healthcare community, and other American consumers of the dangers and risk of harm associated with the use of the Kugel® Patch.

94. Defendants were aware at the time the Kugel® Patch was developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce that implantation of the Kugel® Patch would result in an unreasonably high risk of Kugel® Patch malfunction and risk of injury as discussed herein, which resulted in the product lacking in safety and efficacy when compared to other comparable and less dangerous surgically implanted hernia repair devices on the market.

95. The Kugel® Patch as designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of

them, was defective due to inadequate post-marketing surveillance and warnings. Said Defendants knew and should have known of the existence of risks of serious side effects associated with use of the product, including, but not limited to, patch failure leading to perforation of the bowel, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowel and the Patch, and other serious and severe personal injuries, including death.

96. Defendants continue to fail to adequately warn of the risks of harm associated with use of the Kugel® Patch and instead continue to advertise, market, label, and promote it to the public and the medical community as safe and effective for treatment of the medical conditions described herein.

97. By reason of the foregoing, Defendants are strictly liable in tort to plaintiff.

98. As a proximate result of foregoing defects in the Product and failure to warn of said defects, Plaintiff suffered and will continue to suffer, the injuries and damages set forth in this Complaint.

**FOURTH CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

99. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

100. The Kugel® patch contained a manufacturing defect when it left the possession of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them. The Patch differs from said Defendants' intended result and/or from other ostensibly identical units of the same product line.

102. Plaintiff LARRY PALMER used the product in a way that was reasonably foreseeable to Defendants.

103. As a proximate result of foregoing defects in the Product and failure to warn of said defects, Plaintiff suffered and will continue to suffer, the injuries and damages set forth in this Complaint.

**FIFTH CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

104. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

105. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the Kugel® Patch was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use.

106. At the time of making such express warranties, Defendants knew and should have known that the Kugel® Patch did not conform to the express warranties and representations and that, in fact, the Kugel® Patch is not safe and poses serious health risks, of which Defendants did not accurately warn.

107. As a foreseeable, direct, and proximate result of the breach of the express warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, harm, and economic loss.

108. Plaintiff, the healthcare community, and other American consumers relied on the express warranties made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, regarding the safety and efficacy of the Kugel® Patch and were reasonable

in doing so.

109. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, breached their express warranties because the Kugel® Patch was and continues to be defective and not reasonably safe for its intended purpose.

110. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, expressly represented and warranted to the medical community and consumers, including Plaintiff and his healthcare providers that the Kugel® Patch was safe and fit for the purposes intended, that it was of merchantable quality, that it did not pose dangerous health risks in excess of those risks associated with use of other similar hernia repair devices, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

111. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew and should have known that the representations and express warranties were false, misleading, and untrue in that said Defendants knew the Kugel® Patch was not safe and fit for its intended use, and that the Kugel® Patch caused its users serious injuries that were not adequately warned of, identified, or represented by these Defendants.

112. As a proximate result of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, breaching their express warranties, Plaintiff was caused to suffer the injuries and damages described in this complaint.

///

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

113. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

114. At all times relevant to this action, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, and their predecessors and their successors, and each of them, designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Kugel® Patch, for use as a surgically implanted hernia repair device and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

115. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew of the intended use of the Kugel® Patch, at the time they marketed, sold, and distributed the product for use by plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

116. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, impliedly represented and warranted to the healthcare community, the regulatory agencies, and American consumers, including Plaintiff, and his healthcare providers, that the Kugel® Patch was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

117. The representations and implied warranties made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, were false, misleading, and inaccurate because the Kugel® Patch was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used as it was marketed and intended to be used.

118. Plaintiff, the healthcare community, and other American consumers reasonably relied on the superior skill and judgment of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, as the designers, researchers, developers, manufacturers, fabricators, testers, labelers, inspectors, advertisers, promoters, marketers, sellers, and distributors of the product, as to whether Kugel® Patch was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Kugel® Patch was manufactured and sold.

119. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, placed the Kugel® Patch into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Kugel® Patch was manufactured and sold.

120. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, breached their implied warranty because their Kugel® Patch was not fit for its intended use and purpose.

121. As a proximate result of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, breaching their implied warranties, Plaintiff was caused to suffer the

injuries and damages described in this complaint.

**SEVENTH CAUSE OF ACTION**

**DECEIT BY CONCEALMENT – *CAL. CIV. CODE* §§ 1709 -1710**

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

122. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

123. Plaintiff brings this cause of action pursuant to *Civil Code* §§ 1709 – 1710 *et seq.* which states:

> One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers. A deceit, within the meaning of § 1709 is either: 1. The suggestion, as a fact, of that which is not true, by one who has does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise, made without any intention of performing it.

124. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, from the time the Kugel® Patch was first manufactured, fabricated, tested,

marketed, distributed, and sold and up to the present, willfully deceived Plaintiff by concealing from him, the healthcare community, the FDA, and the American public the true facts concerning the Kugel® patch, which said Defendants, as manufacturers, fabricators, and distributors of the Product, had a duty to disclose. As set forth above, these Defendants, in advance of Plaintiff's use of the Kugel® Patch, were aware of the dangerous and defective condition of the Patch and intentionally withheld this information from Plaintiff, the healthcare community, the FDA, and other American consumers even though these significant dangers were not readily obvious to the ordinary user of the products.

125. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, intentionally and fraudulently concealed the following material information:

a. Defendants knew and should have known that the Kugel® Patch line of products, at all times relevant, were subject to high degree of risk of memory recoil ring failure resulting in, *inter alia*, bowel perforation, chronic intestinal fistula, severe abdominal pain, fever, sepsis, infection, dense internal scarring, and abdominal disfiguration.

b. Limited testing and adverse event reports revealed the Kugel® Patch had an unreasonably high risk of adverse complications given its intended use(s) and higher risk of adverse complications, in addition to, and above and beyond those associated with other similar surgically implanted hernia repair devices.

c. Implantation of the Kugel® Patch would not result in a safe and more effective method of hernia repair treatment than other available treatments;

d. Risk of adverse events with the Kugel® Patch was not adequately tested prior to marketing of the product, nor sufficiently monitored post-market introduction.

e. Defendant's quality assurance program used in the manufacture of the Kugel® Patch violated federal law.

f. Failed to disclose testing as early as early as September 2004 that revealed serious problems with the weld process involving the memory recoil ring.

g. Defendants intentionally and knowingly failed to disclose and intentionally concealed numerous complaints of memory recoil ring failure and other device malfunctions.

h. The Kugel® Patch was defective, and caused dangerous and adverse side effects, including, but not limited to the specific injuries specifically described elsewhere in this Complaint.

i. Patients using the Patch would likely suffer bowel injury and recurrent hernia and would require monitoring of these conditions while treating with the Kugel® Patch;

j. That complications and failures associated with the Kugel® Patch are not limited to the sizes which Defendants have recalled;

k. The Kugel® Patch was negligently and defectively manufactured.

l. The Kugel® Patch was negligently and defectively designed.

m. Defendants were under a duty to disclose to plaintiff and his physicians, the defective design and manufacture of the Kugel® Patch, which design and manufacture heightened the risk of suffering the injuries specifically described in this Complaint and suffered by Plaintiff LARRY PALMER.

126. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, fraudulently concealed the above-mentioned information with willful, wanton, and reckless disregard and depraved indifference for the safety and well being of the users of the Kugel® Patch, such as Plaintiff.

127. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, intentionally concealed and suppressed the true facts concerning the

Kugel® Patch, although said Defendants were bound to disclose the true facts, with the intent to defraud and mislead Plaintiff, in that these Defendants knew that Plaintiff would not have used the subject product, if he was aware of the true facts concerning the dangers of said product.

128. At all times relevant to this action and herein mentioned, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, conducted a sales and marketing campaign to promote the sale of the Kugel® Patch and willfully deceived Plaintiff, the healthcare community, and the American consumers as to the health risks and harmful consequences associated with the use of the aforementioned Product. Said Defendants, and each of them, knew and were aware of the foregoing, and that the Patch was not safe, fit, and effective for its intended use, that the use of said Product is hazardous to human health, and that said Product has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as described in this Complaint.

129. In reliance upon the false and fraudulent misrepresentations and omissions of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, Plaintiff was induced to, and did use the Kugel® Patch, thereby sustaining severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff, the healthcare community, and other American consumers did not have the ability to determine the true facts intentionally concealed by said Defendants in prescribing and implanting the Kugel® Patch, and would not have, respectively, prescribed and implanted same, if the true facts regarding the Patch had not been concealed by these Defendants.

130. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Patch.

131. At the time Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to disclose the foregoing facts, and at the time Plaintiff used the Kugel® Patch, he was unaware of Defendants' failure to disclose the above mentioned facts.

132. Plaintiff reasonably relied upon misrepresentations made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, where knowledge of the concealed facts was critical to understanding the true dangers inherent in the use of the Kugel® Patch.

133. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, conduct was wrongful and constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and purposefully.

134. As a proximate result of Defendants' deceit by concealment, Plaintiff suffered the injuries and damages described in this complaint.

## EIGHTH CAUSE OF ACTION

## DECEIT BY INTENTIONAL MISREPRESENTATION *CAL. CIV. CODE §§1709 – 1710*

**((By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

135. Plaintiff LARRY PALMER re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

136. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, negligently, knowingly, willfully, wrongfully, and intentionally made false misrepresentations, as previously set forth herein, to Plaintiff LARRY PALMER , Plaintiff's healthcare providers, the medical community, the general public, and the FDA including without limitation, the

following: (1) the Kugel® Patch had been adequately tested prior to marketing; (2) the Kugel® Patch did not have dangerous and/or serious adverse health effects and safety concerns; (3) the Patch was as safe, fit, and effective for its intended use; (4) an adequate quality assurance program was in place to monitor the Kugel® Patch for adverse complications; and (5) multiple reports to the FDA underreporting the severity of device-related injuries.

137. The information distributed by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, to the public, the medical community, the FDA, and plaintiff was in the form of reports, press releases, advertising campaigns, print advertisements, commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Kugel® Patch. Defendants made the foregoing misrepresentations knowing that they were false. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public, with the intention of inducing plaintiffs' and other consumers' reliance, purchase, and use of the Product.

138. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, made the foregoing representations knowing that they were false. These representations were made directly by Defendants, their agents, and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase and use of the Patch.

139. Defendants' DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, intent and purpose in making these misrepresentations was to deceive and defraud the public, the FDA, the medical community, including Plaintiff and his healthcare providers; to gain the confidence of the public, the medical community, including Plaintiff and his healthcare providers; to falsely assure them of the quality of the Kugel® Patch and its fitness for use; and to induce

plaintiff, his healthcare providers, the public, and the medical community to request, recommend, prescribe, implant, purchase, and continue to use the Kugel® Patch.

140. Defendant's DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, misrepresentations were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and egregiously without regard to the true facts.

141. In reliance on Defendants' DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, misrepresentations, Plaintiff was induced to purchase and use the Product. If Plaintiff had known of the true facts and the facts that Defendants had concealed falsity of Defendants' representation, the Plaintiff would not have purchased or used the Product.

142. Plaintiff's reliance on Defendants' DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, misrepresentations was justified and reasonable because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

143. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the Kugel® Patch to the public at large, the medical community, and Plaintiff and his healthcare providers in particular, for the purpose of influencing the sales of a product known by Defendants to be dangerous and defective, and not as safe and effective as alternative hernia repair devices.

144. A foreseeable, direct, and proximate result of Defendants described acts and omissions; plaintiff was caused to suffer the serious and dangerous side effects as are more specifically described in this Complaint.

145. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew when they made the aforementioned representations that the representations were false. Defendants intended that Plaintiff would reasonably rely on the representations. Plaintiff did rely on these representations and purchased and used the Product, all her detriment. In this context, Defendants' conduct constituted malice, oppression, and fraud. Plaintiff is therefore intended to recover punitive or exemplary damages.

146. As a foreseeable, direct and proximate result of Defendants' a DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, acts and omissions as described herein, and Plaintiff LARRY PALMER 'S implantation with Defendants' defective product, Plaintiff has suffered serious physical injuries and has incurred substantial medical costs and expenses to treat and care for his injuries described herein. As a further direct and proximate result of Defendants acts and omissions, Plaintiff will continue to suffer serious and permanent physical and emotional injuries, and will continue to incur significant medical costs and expenses, expend large sums of money to pay for medical care and treatment of her physical injuries, and will continue to suffer economic loss, and physical and emotional injuries.

147. As a proximate result of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, engaging in deceitful and fraudulent conduct, Plaintiff was caused to suffer the injuries and damages described in this complaint.

## NINTH CAUSE OF ACTION

## FRUAD AND DECEIT

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

148. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

149. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, from the time the Kugel® Patch was first manufactured, marketed, distributed, and sold and up to the present, willfully deceived Plaintiff by concealing from and misrepresenting to him, his healthcare providers, the FDA, and the general public the true facts concerning the Kugel® Patch, which Defendants, as manufacturers, makers, and distributors of the Patch, had a duty to disclose.

150. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, negligently, knowingly, willfully, wrongfully, and intentionally concealed certain material facts, as previously set forth herein, from Plaintiff, the healthcare community, the FDA, and other American consumers, including without limitation, failing to disclose that the Kugel® Patch was not safe, fit, and effective for use as a surgically implanted hernia repair device despite being aware at all relevant times of the dangerous and defective nature of the Kugel® Patch, as described in this Complaint.

151. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, negligently, knowingly, willfully, wrongfully, and intentionally fraudulently represented, as previously set forth herein, to Plaintiff, the healthcare community, the FDA, and other American consumer s, including without limitation, that the Kugel® Patch was safe, fit, and effective for use as a surgically implanted hernia repair device despite being aware at all relevant times of the dangerous and defective nature of the Kugel® Patch, as described in this Complaint.

152. At all times relevant to this action and herein mentioned, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, conducted a sales and marketing campaign to promote the sale of the Kugel® Patch and willfully deceived Plaintiff, the healthcare community, the FDA, and other American consumers as to the health risks and harmful consequences associated with the use of the Patch. Said Defendants knew and were aware of the foregoing, and that the Patch was not safe, fit, and effective for its intended use, that the use of said

product is hazardous to human health, and that said Product has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as described in this Complaint.

153. At all relevant times the Kugel® Patch was not safe, fit, and effective for human use as a surgically implanted hernia repair device, use of the Patch is hazardous to health, and said product has a serious propensity to cause users to suffer serious injuries, including without limitation the injuries Plaintiff suffered.

154. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, intentionally concealed and misrepresented the true facts concerning the Kugel® Patch, although Defendants were bound to disclose the true facts. Defendants concealed and misrepresented the foregoing material facts knowing that they were false. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public and the medical community, with the intention of inducing plaintiffs' and other consumers' reliance, purchase, and use of the Product.

155. In reliance upon false and fraudulent misrepresentations and omissions made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, Plaintiff was induced to, and did use the Kugel® Patch, thereby sustaining severe and permanent personal injuries and damages. Said Defendants knew and had reason to know that Plaintiff, the healthcare community, and other American consumers did not have the ability to determine the true facts intentionally concealed and misrepresented by them in prescribing and implanting the Kugel® Patch, and would not have, respectively, implanted same, if the true facts regarding the Patch had not been concealed and misrepresented by them.

156. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, had sole access to material facts concerning the defective nature of the

Product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Patch.

157. At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Kugel® Patch, he was unaware of the Defendants' fraudulent misrepresentations and omissions.

158. Plaintiff, the healthcare community, and other American consumers reasonably relied upon Defendants' misrepresentations, where knowledge of the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Kugel® Patch.

159. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew when they made the aforementioned representations that the representations were false. Said Defendants intended that Plaintiff would reasonably rely on the representations. Plaintiff did rely on these representations and purchased and used the Product, all to his detriment. In this context, Defendants' conduct constituted malice, oppression, and fraud.

160. As a proximate result of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, engaging in deceitful and fraudulent conduct, Plaintiff was caused to suffer the injuries and damages described in this complaint.

## TENTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

161. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

162. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, made false misrepresentations, as previously set forth herein, to Plaintiff, the healthcare community, the FDA, and other American consumers, including without limitation, the misrepresentation that the Kugel® Patch was safe, fit, and effective for use in its intended and reasonably foreseeable manner.

163. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, made the foregoing representations without reasonable grounds for believing them to be true. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public, with the intention of inducing Plaintiff, the healthcare community, and other American consumers to rely on these representations and purchase and use the Kugel® Patch.

164. The foregoing representations by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, were in fact false. The Kugel® Patch was not safe, fit, and effective for human use in its intended and reasonably foreseeable manner, the use of the Kugel® Patch is hazardous to the user's health, and said patch has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff suffered.

165. In reliance upon the false and fraudulent misrepresentations and omissions made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, Plaintiff, the healthcare community, and other American consumers were induced to, and did use the Kugel® Patch, thereby causing those persons implanted, including Plaintiff, to sustain severe and permanent personal injuries and damages. Said Defendants knew and had reason to know that Plaintiff, the healthcare community, and other American consumers did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by them in prescribing and

implanting the Kugel® Patch, and would not have, respectively, prescribed and implanted same, if the true facts regarding the Patch had not been concealed and misrepresented by Defendants.

166. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Patch.

167. At the time Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Kugel® Patch, Plaintiff and his physicians were unaware of said Defendants' fraudulent misrepresentations and omissions.

168. Plaintiff , the healthcare community, and other American consumers reasonably relied upon Defendants' the misrepresentations made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, where knowledge of the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Kugel® Patch.

169. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew when they made the aforementioned representations that the representations were false. Said Defendants intended that Plaintiff , the healthcare community, and other American consumers would reasonably rely on the representations. Plaintiff, the healthcare community, and other American consumers did rely on these representations and purchased and used the Product, all to detriment of those whom the product was implanted, including Plaintiff. In this context, Defendants' conduct constituted malice, oppression, and fraud. Plaintiff is therefore intended to recover punitive or exemplary damages.

170. As a proximate result of the negligent misrepresentations made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, Plaintiff was caused to suffer the injuries and damages described in this complaint.

**ELEVENTH CAUSE OF ACTION**

**VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17200, *ET SEQ.***

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

171. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

172. Plaintiff brings this cause of action pursuant to The Unfair Practices Act *Business and Professions Code* §§ 17200 *et seq.* which provides that unfair and deceptive business practices shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

173. The acts and practices described above, were and are likely to and did mislead the general public, including plaintiff, and therefore constitute unfair business practices within the meaning of *Business and Professions Code* §§ 17200, *et seq.* The acts of untrue and misleading advertising set forth in preceding paragraphs are incorporated by reference and are, by definition, in violation of *Business and Professions Code* §§ 17200 *et seq*. This conduct includes but is not limited to:

(a) Representing to Plaintiff, his physicians, and the general public that the Kugel® Patch was safe, fit, and effective for its intended use, knowing that said representations were false, and concealing from Plaintiff, his physicians, and the general public that said product had a serious propensity to and did cause physical harm and injuries to users.

(b) Engaging in advertising programs designed to create the image, impression, and belief by consumers and physicians that the Kugel® Patch was safe for human use, had fewer side effects and/or adverse reactions than other surgically implanted hernia repair devices, constituted a safe and effective form of repairing hernias, even though Defendants knew these representations to be false, and even though Defendants had no reasonable grounds to believe them to be true.

(c) Purposefully and intentionally downplaying and understating the health hazards and risks associated with the Kugel® Patch which were known to Defendants.

(d) Issuing promotional literature deceiving potential users of the Kugel® Patch by relaying positive information, including testimonials from satisfied users to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of said product.

(e) Encouraging the use of the Kugel® Patch while knowing that the said product was especially hazardous, had not been systemically tested by appropriate clinical trials, had not been adequately tracked post-marketing, and causes serious adverse health effects.

174. These practices constitute unlawful, unfair, and fraudulent business acts or practices, within the meaning of *Business and Professions Code* §§17200 *et seq*., as well as unfair, deceptive, untrue and misleading advertising as prohibited by *Business and Professions Code* § 17500.

175. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, acted willfully, knowingly, intentionally, unconscionably and with reckless indifference for the health, safety, and well being of the consumers of the product when committing the foregoing false and misleading advertising. As a foreseeable, direct, and proximate result of

Defendants' actions towards consumers of the Kugel® Patch, Plaintiff purchased and was implanted with an unreasonably dangerous and unsafe product and incurred monetary damages and expenses.

176. The unlawful, unfair, and fraudulent business practices of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described herein.

177. As a result of their conduct described in this Complaint and specifically in this cause of action, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, have been and will be unjustly enriched. Specifically, said Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale of said Product, sold as a result of Defendants' acts and omissions, as unlawful, unfair, deceptive, and fraudulent described herein.

178. Because of the fraudulent misrepresentations by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, as detailed above, and the inherently unfair practice of committing a fraud against the public by intentionally misrepresenting and concealing material information, the acts of said Defendants described herein constitute unfair or fraudulent business practices.

179. Plaintiff, pursuant to *Business and Professions Code* § 17203, seeks an order of this court compelling Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, to provide restitution, and to disgorge the monies collected and profits realized by said Defendants, and each of them, as a result of their unfair business practices, and injunctive relief calling for same, to forever cease and desist such unfair business practices in the future.

///

**TWELFTH CAUSE OF ACTION**

**VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17500, *ET SEQ.***

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

180. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

181. Plaintiff brings this cause of action pursuant to *Business and Professions Code* § 17500 which provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

182. At all times herein mentioned Defendants have committed acts of disseminating untrue and misleading statements as defined by *Business and Professions Code* § 17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use Defendants' Kugel® Patch:

a. Representing to Plaintiff, his physicians, and the general public that said product was safe, fit, and effective for its intended use, knowing that said representations were false, and concealing from Plaintiff, his physicians, and the general public that said product had a serious propensity to and did cause injuries to users.

b. Engaging in advertising programs designed to create the image, impression, and belief by consumers, including Plaintiff, and his physicians that the use of the Kugel® Patch was safe for human use, had fewer side effects and/or adverse reactions than other surgically implanted hernia repair devices, constituted a effective

and safe hernia repair method and would not interfere with daily life, even though Defendants knew these statements and representations to be false, and even though Defendants had no reasonable grounds to believe them to be true.

c. Purposefully and intentionally downplaying and understating the health hazards and risks associated with the Kugel® Patch, which were known to Defendants.

d. Issuing promotional literature deceiving potential users of the Kugel® Patch by relaying positive information, including testimonials from satisfied users to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of said product.

e. Encouraging the use of the Kugel® Patch while knowing that the said product was especially hazardous, had not been systemically tested by appropriate clinical trials, had not been adequately tracked post-marketing, and causes serious adverse health effects.

183. The foregoing practices constitute false and misleading advertising within the meaning of *Business and Professions Code* § 17500.

184. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, acted willfully, knowingly, intentionally, unconscionably and with reckless indifference for the health, safety, and well being of the consumers of the product when committing the foregoing false and misleading advertising. As a foreseeable, direct, and proximate result of Defendants' actions towards consumers of the Kugel® Patch, Plaintiff purchased and was implanted with an unreasonably dangerous and unsafe product and incurred monetary damages and expenses.

185. The acts of untrue and misleading statements by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, described in this Complaint and specifically in this cause of action present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm proximately caused by said Defendants' conduct and Product.

186. As a result of their false and misleading statements described above, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by hundreds of millions of dollars in ill-gotten gains from the sale and implantation of the Kugel® Patch, implanted and sold as a result of the false or misleading statements of Defendants described herein.
Pursuant to *Business and Professions Code* §17535, Plaintiff seeks an order of this court compelling Defendants Pursuant to *Business and Professions Code* §17535, Plaintiff seeks an order of this court compelling Defendants to provide restitution, and to disgorge the monies collected and profits realized by Defendants, and each of them, as a result of their unfair business practices, and injunctive relief calling for Defendants, and each of them, to forever cease and desist such unfair business practices in the future.

187. Plaintiff seeks the imposition of a constructive trust over, and restitution and disgorgement of, the monies collected and profits realized by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, to cease such false and misleading advertising in the future.

**THIRTEENTH CAUSE OF ACTION**

**VIOLATION OF *CIVIL CODE* §§ 1750, *ET SEQ.***

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

188. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

189. Plaintiff is informed and believes and thereon alleges that Defendants, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, by the acts and misconduct alleged herein, violated the Consumers Legal Remedies Act *Civil Code* §§ 1750 *et. seq.* ("CLRA").

190. Plaintiff hereby seeks injunctive relief as appropriate against Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, for their violations of *Civil Code* §§ 1750, *et seq*. The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions which are intended to result, or which have resulted, in the sale of goods to consumers.

191. Plaintiff is a "consumer" within the meaning of *Civil Code* § 1761(d).

192. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, have violated, and continue to violate the CLRA which prohibits the following unfair methods of competition and unfair or deceptive acts or practices when undertaking in connection with a transaction that is intended to result, or that does result in the sale of goods to a consumer.

a. "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." *Civil Code* § 1770(a)(5).

b. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.' *Civil Code* § 1770(a)(7).

193. At all times herein mentioned Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, have committed acts of disseminating untrue and

misleading statements as defined by *Civil Code* § 1770 by engaging in the following acts and practices with intent to induce members of the public, including Plaintiff, to purchase and use the Kugel® Patch:

a. Representing to Plaintiff, the healthcare community, and other American consumers that the Kugel® Patch was safe, fit, and effective for human use, and that said product was just as safe, fit, and effective as alternative surgically implanted hernia repair devices, knowing that said representations were false, and concealing from Plaintiff, the healthcare community, and other American consumers that the Patch had an increased propensity to cause physical harm and injuries to users;

b. Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the use of the Kugel® Patch was safe, had fewer side effects and/or adverse reactions than other surgically implanted hernia repair devices, and would not interfere with daily life, even though Defendants knew these representations to be false at the time they made them, even though Defendants had no reasonable ground to believe them to be true;

c. Purposely downplaying and understating the health hazards and risks associated with the Kugel® Patch; and

d. Issuing promotional literature deceiving potential users of the Kugel® Patch by relaying positive information and manipulating statistics to suggest that the risks of said product were the same as those known to be associated with other surgically implanted hernia repair devices, while downplaying the known increase of adverse and serious health effects and concealing material relevant information regarding the safety of the Patch.

194. The foregoing practices constitute false and misleading advertising and representations within the meaning of *Civil Code* § 1770. The acts of untrue and misleading statements by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them,

described herein present a continuing threat to members of the public and individual consumers, including Plaintiff, in that the acts alleged herein are continuous and ongoing, and the public and individual consumers will continue to suffer harm as alleged herein.

195. Unless Defendants are enjoined from continuing to engage in these violations of the CLRA, Plaintiff will continue to be harmed by Defendants' wrongful actions and conduct.

196. Unless Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them ,are enjoined from continuing to engage in these violations of the CLRA, Plaintiff will continue to be harmed by Defendants' wrongful actions and conduct.

197. Pursuant to *Civil Code* § 1780, Plaintiff seek an order of this court for injunctive relief calling for Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, and each of them, to cease such deceptive business practices in the future.

## FORTEENTH CAUSE OF ACTION
## MEDICAL NEGLIGENCE

**(By Plaintiff LARRY PALMER Against Defendants COLLEEN L. COLEMAN, M.D.., HOAG MEMORIAL HOSPITAL PRESBYTERIAN, and DOES 151 through 300, inclusive.)**

198. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

199. From at least February 22, 2006 through October 2007 Plaintiff LARRY PALMER engaged for compensation the services of Healthcare Defendants, COLLEEN L. COLEMAN, M.D., HOAG MEMORIAL HOSPITAL PRESBYTERIAN, and DOES 151 through 300, inclusive, to examine, diagnose, prescribe medicines for, perform surgery upon, treat, handle, control and provide

competent medical consultant advice for the care, treatment and diagnosis of a medical condition involving his ventral hernia and to perform the necessary tests, therapy and surgery for the treatment of said condition, if same were required.

200. During October 2003, Healthcare Defendants undertook to handle and control the medical care and treatment of Plaintiff, LARRY PALMER, and to provide whatever medical consultant advice was reasonably necessary for the treatment and surgery of plaintiff Mr. PALMER.

201. In the aforementioned examinations, diagnoses, prescriptions of medicines and drugs, surgery and the handling and control of the care and treatment of Plaintiff, Mr. PALMER, by Healthcare Defendants, said Defendants on or about October 29, 2003 willfully, negligently, recklessly, and dangerously failed to possess, provide, and/or exercise that degree and standard of knowledge or skill that is required to be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, physician assistants, and other healthcare providers and healthcare professionals engaged in said professions in the same locality as Healthcare Defendants, in that said Defendants negligently, willfully, and unlawfully failed to properly and correctly diagnose, render care and treatment to, perform proper surgery upon, and prescribe and administer medications and treatment for the condition, and health and well being of Plaintiff, LARRY PALMER, on said date which proximately resulted in, but not limited to, major surgery to remove a defective and unreasonably dangerous Kugel® Patch, bowel injury, with resulting sever and permanent injury.

202. As a direct and proximate result of the acts and omissions of Healthcare Defendants Plaintiff, LARRY PALMER, has incurred medical expenses, both past, present and future, the exact value and amount of which is presently unknown, and plaintiff will ask leave of court to amend this complaint when the same is ascertained. Plaintiff also has suffered and will suffer in the future, loss of earnings and loss of earnings capacity.

203. As a further, direct and proximate result of the acts and omissions of the Defendants, and each of them, Plaintiff, LARRY PALMER, has suffered the injuries and damages set forth in this complaint.

**FIFTEENTH CAUSE OF ACTION**

**LOSS OF CONSORTIUM**

**(By Plaintiff LORETTA PALMER Against All Defendants)**

204. Plaintiffs re-allege and incorporate by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

205. LORETTA PALMER is and was at all times relevant to this action, the legal wife of LARRY PALMER, and they have at all times relevant to this action, lived together as husband and wife.

206. As a proximate result of the personal injuries suffered by LARRY PALMER, LORETTA PALMER has been deprived of the benefits of their marriage including her husband's love, affection, society, and consortium, and other husbandly duties and actions. LARRY PALMER provided LORETTA PALMER with all of the benefits of a marriage between husband and wife, prior to his implantation with the Kugel® Patch and the resulting injuries described above.

207. LORETTA PALMER has also suffered the permanent loss of her husband's daily and regular contribution to the household duties and services, which each provides to the household as husband and wife.

208. LORETTA PALMER has also incurred the costs and expenses related to the medical care, treatment, medications, and hospitalization to which LARRY PALMER was subjected for the physical injuries he suffered as a proximate result of his ingestion of the Kugel® Patch. LORETTA PALMER will continue to incur the future costs and expenses related to the care, treatment, medications, and hospitalization of MR. PALMER due to his injuries from the Kugel® Patch.

209. LORETTA PALMER has suffered a loss of consortium, as described herein, including the past, present, and future loss of her husband's companionship, services, society, and the ability of LARRY PALMER to provide LORETTA PALMER with the benefits of marriage, including *inter alia*, loss of contribution to household income and loss of household services, all of which has resulted in her pain, suffering, and mental and emotional distress and worry.

**PUNITIVE DAMAGES ALLEGATIONS**

***CIVIL CODE* § 3294**

**(Against Defendants DAVOL, BARD DEVICES, C.R. BARD,**

**and DOES 1 through 150, inclusive)**

210. Plaintiffs reallege each and every allegation in this Complaint and incorporate each allegation into this Count, as if set forth at length, in its entirety.

211. Plaintiffs are entitled to an award of punitive and exemplary damages based upon Defendants' DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare. Defendants intentionally and fraudulently misrepresented facts and information to both the healthcare community and the general public, including Plaintiff, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the Kugel® Patch. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with the ingestion of said product, and intentionally downplayed the type, nature, and extent of the adverse side effects of being implanted with the Kugel® Patch, despite Defendants' knowledge and awareness of the serious and permanent side effects and risks associated with use of same.

212. Defendants had knowledge of, and were in possession of evidence demonstrating that, the Kugel® Patch caused serious physical side effects. Defendants continued to market said product by providing false and misleading information with regard to the product's safety and efficacy to the regulatory agencies, the medical community, and consumers of Kugel® Patch, notwithstanding Defendants' knowledge of the true serious side effects of the Kugel® Patch,

213. Defendants failed to provide accurate information and warnings to the healthcare community that would have dissuaded physicians from surgically implanting the Kugel® Patch and consumers from agreeing to being implanted with the Kugel® Patch, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and implanting the Kugel® Patch.

214. As a foreseeable, direct, and proximate result of Defendants' acts and omissions a described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered, and will continue to suffer, the injuries and damages described in this complaint.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiffs, LARRY PALMER AND LORETTA PALMER, pray for relief on the entire Complaint, as follows:

1. Judgment be entered against all defendants on all causes of action of this Complaint;
2. Plaintiffs be awarded their full, fair and complete recovery for all claims and causes of action alleged herein;
3. Plaintiffs be awarded all appropriate costs, attorney's fees, expenses, and pre-judgment and post-judgment interest, as authorized by law on the judgments which are entered in Plaintiffs favor; and,
4. Such other relief the court deems as just and appropriate.

**WHEREFORE,** Plaintiffs, LARRY PALMER AND LORETTA PALMER, pray for judgment against Defendants, and each of them, as follows:

**AS TO THE FIRST CAUSE OF ACTION FOR NEGLIGENCE**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE SECOND CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE THIRD CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

1. General damage according to proof at the time of trial;
2. Medical and other special damages, past, present and future, according to proof at the time of trial;
3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;
4. For medical monitoring according to proof;
5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;
6. Punitive Damages;
7. Costs of suit incurred herein; and
8. For such other and further relief as the court may deem just and proper.

**AS TO THE THIRD CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

1. General damage according to proof at the time of trial;
2. Medical and other special damages, past, present and future, according to proof at the time of trial;
3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;
4. For medical monitoring according to proof;
5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;
6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE FIFTH CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE SIXTH CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE SEVENTH CAUSE OF ACTION FOR DECEIT BY CONCEALMENT**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE EIGHTH CAUSE OF ACTION FOR DECEIT BY INTENTIONAL MISREPRESENTATION**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE NINTH CAUSE OF ACTION FOR FRAUD AND DECEIT**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE TENTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

///

**AS TO THE ELEVENTH CAUSE OF ACTION FOR VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17200 *ET SEQ.***

1. For injunctive relief, forever enjoining defendants from the acts of unfair competition and untrue and misleading business practices, and ordering defendants to pay restitution to Plaintiff, LARRY PALMER, all funds acquired by means of any act or practice declared by this court to be in violation of *Business and Professions Code* Section 17200, et seq., unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

2. For disgorgement of Defendant's profits;

3. For exemplary and punitive damages in an amount to be proven at trial;

4. For such other and further relied as the Court deems just and proper;

5. For attorneys, according to proof.

**AS TO THE TWELFTH CAUSE OF ACTION FOR VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17500 *ET SEQ.***

1. For injunctive relief, forever enjoining defendants from the acts of unfair competition and untrue and misleading business practices, and ordering defendants to pay restitution to Plaintiff, LARRY PALMER, all funds acquired by means of any act or practice declared by this court to be in violation of *Business and Professions Code* Section 17500, et seq., unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

2. For disgorgement of Defendant's profits;

3. For exemplary and punitive damages in an amount to be proven at trial;

4. For such other and further relied as the Court deems just and proper;

5. For attorneys, according to proof.

///

**AS TO THE THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF *CIVIL CODE* §§ 1750 *ET SEQ.***

1. For injunctive relief, forever enjoining defendants from the acts of unfair competition and untrue and misleading business practices, and ordering defendants to pay restitution to Plaintiff, LARRY PALMER, all funds acquired by means of any act or practice declared by this court to be in violation of *Civil Code* Section 1750, et seq., unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

2. For disgorgement of Defendant's profits;

3. For exemplary and punitive damages in an amount to be proven at trial;

4. For such other and further relied as the Court deems just and proper;

5. For attorneys, according to proof.

**AS TO THE FORTEENTH CAUSE OF ACTION FOR MEDICAL NEGLIGENCE**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE FIFTEENTH CAUSE OF ACTION FOR LOSS OF CONSORTIUM**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs LARRY PALMER and LORETTA PALMER demand a trial by jury on all triable issues in this civil action.

Dated: December 11, 2007

LOPEZ McHUGH LLP

By: [signature]

RAMON ROSSI LOPEZ
CHRISTINA ANNE FOUNTAIN
TROY A. BRENES
Attorneys for Plaintiffs
LARRY PALMER and LORETTA PALMER,

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):**

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR information package along with the complaint and/or cross-complaint.**

California Rules of Court - Rule 3.221
Information about ADR

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR information package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) In counties that are participating in the Dispute Resolution Programs Act (DRPA), information about the availability of local dispute resolution programs funded under the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR information package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

## Did you know that most civil lawsuits settle without a trial?

**Introduction**
And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (ADR). The most common forms of ADR are mediation, arbitration, and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court. ADR is not new. ADR is available in many communities, through dispute resolution programs and private neutrals.

**Advantages of ADR**
ADR can have a number of advantages over a lawsuit. ADR can be speedier. A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years. ADR can save money. Court costs, attorney's fees, and expert fees can be saved. ADR can permit more participation. The parties may have more chances to tell their side of the story than in court and may have more control over the outcome. ADR can be flexible. The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

ADR can be cooperative. This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other. ADR can reduce stress. There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

ADR can be more satisfying. For all the above reasons, many people have reported a high degree of satisfaction with ADR. Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

**Disadvantages of ADR**
ADR may not be suitable for every dispute. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

**Three Common Types of ADR**
This pamphlet describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

**MEDIATION**
In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved. The parties do.

Mediation is a cooperative process, in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other, where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how each other sees things. Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or cannot have enough bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

**ARBITRATION**
In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. This is very different from mediation, where the mediator helps the parties reach their own resolution. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Because of the large number of cases awaiting trial in many courts, a dispute normally can be heard much more quickly by an arbitrator than by a judge.

Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records), rather than by testimony.

There are two kinds of arbitration in California. Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and, normally, is binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. By contrast, a decision by an arbitrator in a case referred by the courts, known as "judicial arbitration," is not binding, unless the parties agree to be bound. A party who does not like the award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to resolve their dispute by themselves, or with the aid of a neutral.

**CASE EVALUATION**
In case evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments, and makes an evaluation of the case. Each party gets a chance to present the case and hear the other side. This may lead to a settlement, or at least help the parties prepare to resolve the dispute later on.

Case evaluation, like mediation, can come early in the dispute and save time and money.

Case evaluation is most effective when someone has an unrealistic view of the dispute or when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Case evaluation may not be a good idea when it is too soon to tell what the case is worth or when the dispute is about something besides money, like a neighbor playing loud music late at night.

**Additional Information**
There are several other types of ADR beside mediation, arbitration, and case evaluation. Some of these are conciliation, settlement conferences, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering. Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge. You may wish to seek the advice of an attorney as to your legal rights and other matters relating to the dispute.

**Whom Do You Call?**
To locate a dispute resolution program or neutral in your community:
Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-952-5210, or contact the local bar association, or look in the Yellow Pages under "Arbitrators" or "Mediators."

For more information on local Arbitration Programs, please phone 714/834-3774 (for court ordered arbitration only) or refer to Superior Court of California, County of Orange, Local Rules 360 and 446.

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, phone: Institute for Conflict Management (714) 288-5600; Community Service Programs, Inc. (949) 851-3168; Orange County Human Relations (714) 834-7198; or Fair Housing Council of Orange County (714) 569-0827.

**There may be a charge for services provided by private arbitrators and mediators.**
*Presented by the Judicial Council of California and the State Bar of California - March 1998*

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor-Laguna Hills Facility - 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251<br>☐ Harbor-Newport Beach Facility - 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North - 1275 N. Berkeley Ave., P. O. Box 5000, Fullerton, CA 92838-0500<br>☐ West - 8141 13th Street, Westminster, CA 92683-4593 | *FOR COURT USE ONLY* |
|---|---|
| PLAINTIFF:<br><br>DEFENDANT: | |
| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |

Plaintiff(s),______________________________

______________________________

and defendant(s),______________________________

______________________________

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
- ☐ Under Section 1141.11 of the Code of Civil Procedure
- ☐ Under Section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

☐ Other (specify):______________________________

☐ Plaintiff(s) and Defendant(s) further agree as follows:

______________________________
______________________________
______________________________
______________________________
______________________________
______________________________
______________________________
______________________________

We understand that there may be a charge for services provided by private arbitrators and mediators.

Date:______________ ______________________ ______________________
(SIGNATURE OF PLAINTIFF OR ATTORNEY) (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:______________ ______________________ ______________________
(SIGNATURE OF DEFENDANT OR ATTORNEY) (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

FROM: Maria Sahagun-Sanchez (213)337-4615
CT - Los Angeles SOP Team
818 West Seventh Street

Los Angeles, CA 90017

TO: **Stephen Long (908)277-8267**
**C. R. Bard, Inc.**
**730 Central Avenue**

**New Providence, NJ 07974**
Ref: SOP/0413900/513027439/Maria Sahagun-Sanc

DELIVERY ADDRESS (FedEx-EDR)

FedEx Revenue Barcode

CAD#: 8318649
SHIP DATE: 29JAN08
WEIGHT: 1 LB

STANDARD OVERNIGHT

WED
A1
Deliver by:
30JAN08

TRK # 7914 8753 7317

FORM
0201

EWR

07974 -NJ-US

# 07 KBCA

CLS120707