**EXHIBIT B**

Thomas Minder, Esq., SBN 59808
Jonathan Saul, Esq., SBN 189271
THOMAS MINDER & ASSOCIATES
2151 River Plaza Drive, Suite 290
Sacramento, California 95833
Telephone: (916) 929-4400
Facsimile: (916) 929-4466

Attorney for Plaintiffs
DANIEL POSTON and DARLINE POSTON

FILED / ENDORSED
NOV 15 2006
By L. GUTIERREZ
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA,

COUNTY OF SACRAMENTO

| | |
|---|---|
| DANIEL POSTON and DARLINE POSTON, Plaintiffs, vs. DAVOL, INC., and DOES 1 through 10 and ROES 11 through 20, inclusive, Defendants. | CASE NO: 06AS04935 COMPLAINT - PRODUCT LIABILITY |

Plaintiffs DANIEL POSTON and DARLINE POSTON alleges against defendants DAVOL, INC., and DOES 1 through 10 and ROES 11 through 20, and each of them, as follows:

PARTIES AND JURISDICTION

1. Plaintiffs DANIEL POSTON and DARLINE POSTON are and were at all times relevant hereto residents of the State of California, County of Sacramento.

2. Plaintiffs are informed and believe, and thereon allege, defendant DAVOL, INC. (hereinafter "DAVOL") is a Delaware Corporation which provides medical supplies and instruments to medical providers throughout the United States, including California, and the Sacramento area, and has an agent for service of process in Los Angeles, California.

3. Plaintiffs are informed and believe, and thereon allege, defendant DAVOL, and ROES 11 through 20, manufactured, designed, marketed and provided the surgical mesh utilized

during the procedure in question, a hernia surgery, performed on Plaintiff DANIEL POSTON in or about June 2005.

4. Plaintiff DANIEL POSTON suffered complications following his hernia surgery, and was eventually informed, in August 2006, that the mesh utilized in his prior surgery had been recalled.

5. Plaintiff DANIEL POSTON was forced to undergo a subsequent procedure, in November 2006, during which the recalled mesh was removed.

6. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, each of said Defendants was the agent and employee of each of the remaining Defendants and in doing each of the things alleged herein was acting within the course and scope of said agency and employment.

7. The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1 through 10 and ROES 11 through 20 are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as "DOE" or "ROE" are legally responsible in some manner for the events and happenings herein referred to, and legally caused injuries and damages to Plaintiffs, as herein alleged. Plaintiffs will seek leave to insert the true names of said Defendants herein when they are ascertained.

**FIRST CAUSE OF ACTION**

**Negligence**

**(Defendant DAVOL, INC.)**

8. Plaintiffs refer to and herein incorporates the preceding paragraphs 1-7, as though fully set forth herein.

9. That at all times herein mentioned, Defendant DAVOL and ROES 11 through 20, and each of them, negligently and carelessly researched, designed, manufactured, inspected, marketed, warranted, and advertised the surgical mesh utilized during the surgery in question, and that Defendants negligently and carelessly allowed the product to be sold, used and consumed by the general public. The product in question was unfit for its intended use inasmuch

as it caused personal injuries to the user and consumer when used in a manner reasonably foreseeable.

10. At all times mentioned herein, Defendant DAVOL and ROES 11 through 20, and each of them, knew or in the exercise of reasonable care should have known, that the product was of such a danger that it was likely to injure persons who used it.

11. At all times herein mentioned, Defendant DAVOL and ROES 11 through 20, and each of them, had a duty to properly research, design, manufacture, inspect, market, warrant and advertise the product and that Defendant DAVOL and ROES 11 through 20, and each of them, breached that duty to the general public and, in particular, to Plaintiff DANIEL POSTON.

12. Because of the negligence of Defendants DAVOL and ROES 11 through 20, and each of them, in the research, manufacture, inspection, marketing, warranting, and advertising the product, Plaintiff DANIEL POSTON sustained personal injuries.

13. As a legal result of the conduct of Defendants DAVOL and ROES 11 through 20, and each of them, Plaintiff DANIEL POSTON sustained injuries which have caused and continue to cause him mental, emotional and physical pain and suffering. Plaintiff DANIEL POSTON alleges that said injuries will result in some permanent disability, resulting in general damages in an amount in excess of the jurisdictional limits of this court.

14. As a further legal result of the conduct of Defendants DAVOL and ROES 11 through 20, and each of them, Plaintiff DANIEL POSTON was required to employ health care providers to treat and care for him. Plaintiffs have incurred medical expenses, the amount of which is presently unknown and said expenses are continuing to occur and, when finally determined, will ask leave of the Court to assert such damages.

## <u>SECOND CAUSE OF ACTION</u>

**Loss of Consortium**

**(Defendant DAVOL, INC.)**

15. Plaintiffs refer to and herein incorporates the preceding paragraphs 1-14, as though fully set forth herein.

///

16. At all times herein mentioned, Plaintiff DARLINE POSTON was the wife of Plaintiff DANIEL POSTON. As a further direct and legal result of the negligence and carelessness of Defendants, and each of them, Plaintiff DARLINE POSTON has been deprived of the care, comfort, companionship, society, and consortium of her husband, all to Plaintiff DARLINE POSTON's damages in excess of the jurisdictional minimum of this court.

**THIRD CAUSE OF ACTION**

**Strict Liability**

**(Defendant DAVOL, INC.)**

17. Plaintiffs refer to and herein incorporates the preceding paragraphs 1-16, as though fully set forth herein.

18. That at all times herein mentioned, Defendants DAVOL and ROES 11 through 20, and each of them, researched, designed, manufactured, inspected, marketed, warranted, and advertised the surgical mesh, which contained design, manufacturing and warning defects capable of causing personal injuries to the user and consumer while being used in a reasonably foreseeable manner. The aforementioned conduct rendered the product unsafe and dangerous for use by consumers, including Plaintiff DANIEL POSTON.

19. Defendants, and each of them, knew that the product was to be used without inspection for defects by Plaintiff DANIEL POSTON.

20. At all material times, the product hereinabove described was unsafe for its intended use by consumers by reason of defects in its manufacture and design rendering it unreasonably dangerous to foreseeable users.

21. Plaintiff DANIEL POSTON alleges that the conduct of Defendants DAVOL and ROES 11 through 20, and each of them, in designing and manufacturing the product in question was the legal cause of his injuries and damages.

22. As a legal result of the conduct of Defendants DAVOL and ROES 11 through 20, and each of them, Plaintiff DANIEL POSTON sustained injuries which have caused and continue to cause him mental, emotional and physical pain and suffering. Plaintiff DANIEL

POSTON alleges that said injuries will result in some permanent disability, resulting in general damages in an amount in excess of the jurisdictional limits of this court.

**PRAYER**

WHEREFORE, Plaintiffs' pray for judgment against Defendants DAVOL, INC., DOES 1 through 10 and ROES 11 through 20, and each of them, as follows:

1. For general damages in an amount exceeding the jurisdictional minimum of this court;
2. For all medical and incidental expenses, according to proof;
3. For Plaintiff DARLINE POSTON's loss of consortium;
4. For lost earnings and earning capacity, according to proof;
5. For pre-judgment interest;
6. For costs of suit incurred herein; and,
7. For such other and further relief as the court deems just and proper.

Dated: November 10, 2006

THOMAS MINDER & ASSOCIATES

By ____________________
Jonathan Saul
Attorney for Plaintiffs
DANIEL POSTON and DARLINE POSTON

Thomas Minder, Esq., SBN 59808
Jonathan Saul, Esq., SBN 189271
THOMAS MINDER & ASSOCIATES
2151 River Plaza Drive, Suite 290
Sacramento, California 95833
Telephone: (916) 929-4400
Facsimile: (916) 929-4466

Attorney for Plaintiffs
DANIEL POSTON and DARLINE POSTON

SUPERIOR COURT OF CALIFORNIA,

COUNTY OF SACRAMENTO

| | |
|---|---|
| DANIEL POSTON and DARLINE POSTON, Plaintiffs, vs. DAVOL, INC., and DOES 1 through 10 and ROES 11 through 20, inclusive, Defendants. | CASE NO: 06AS04935<br>STATEMENT OF DAMAGES |

Comes now Plaintiff, DANIEL POSTON, and provides his Statement of Damages as follows:

1. Plaintiff will claim his reasonable and necessary medical expenses according to proof at the time of trial;

2. Plaintiff will claim general damages to compensate him for the pain, suffering, fear, anxiety, embarrassment and emotional distress which this incident has caused in the amount of $1,000,000,000.

Dated: November 20, 2006

THOMAS MINDER & ASSOCIATES

By ______________________
Jonathan Saul
Attorney for Plaintiffs
DANIEL POSTON and DARLINE POSTON

EXHIBIT C

RECEIVED
JUL 2 0 2007
C.R. BARD, INC.
LAW DEPT

FILED
07 MAY -3 PM 12:42
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

Janice F. Mulligan, SB# 99080
Elizabeth A. Banham, SB# 131734
**MULLIGAN & BANHAM**
2442 Fourth Avenue , Suite 100
San Diego, CA 92101
Telephone (619) 238-8700
Facsimile (619) 238-8701

Christopher A. Seeger, Esq.
David R. Buchanan, Esq.
Scott Alan George, Esq.
**SEEGER WEISS LLP**
One William Street
New York, New York 10004
(212) 584-0700

Attorneys for Plaintiffs WENDY H. RISLEY and TRACY A. RISLEY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WENDY H. RISLEY; and TRACY A. RISLEY, | Case No 07 CV 0806 L (BLM) |
| Plaintiffs, | COMPLAINT FOR DAMAGES |
| vs. | |
| DAVOL, INC., and C.R. BARD, INC. | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiffs herein, WENDY H. RISLEY and TRACY A. RISLEY, allege the following against Defendants DAVOL, INC., and C.R. BARD, INC.:

## NATURE OF THE CASE

1. Plaintiff, WENDY RISLEY ("Ms. RISLEY"), developed serious and potentially life threatening conditions caused by the insertion of a defective Bard Composix Kugel Mesh Hernia Patch, manufactured by Defendants DAVOL, INC., and C.R. BARD, INC. Plaintiffs seek relief for their injuries under claims of negligence, strict liability for failure to warn, strict liability for design defect, fraudulent concealment, and breach of warranty for Defendants' responsibilities in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, and distribution of the patch that caused Plaintiffs' injuries.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1332 (diversity of citizenship). The matter in controversy in this civil action exceeds the sum of $75,000, exclusive of interest and costs, as to each defendant and is between citizens of different states.

3. Venue in this District is proper under 28 U.S.C. 1391. The events and omissions giving rise to this cause of action occurred in substantial part in this District and defendants transact business here.

4. Plaintiffs, and each of them, who reside in the City of El Cajon in the County of San Diego, in the State of California, are residents of the Southern District of California of the United States District Court, and the occurrences which give rise to this action took place in the Southern District of California of the United States District Court.

5. Plaintiff is informed and believes, and thereon alleges that Defendant C.R. BARD, INC., is a business organization incorporated in the state of New Jersey with its principal place of

business in New Jersey

6. Plaintiff is informed and believes, and thereon alleges that Defendant DAVOL, INC., is a business organization incorporated in the state of Rhode Island with its principal place of business in Rhode Island, and is a subsidiary or division of Defendant C. R. BARD, INC.

## BACKGROUND AND FACTUAL ALLEGATIONS

7. On or about May 5, 2005, Plaintiff Ms. RISLEY, underwent a hernia repair procedure at Naval Medical Center San Diego. During this procedure, physicians implanted a BARD KUGEL COMPOSIX MESH PATCH measuring approximately 10 x 14 cm in Plaintiff Ms. RISLEY. The lot number of the patch implanted was 43DOD232.

8. Defendants DAVOL, INC., and C.R. BARD, INC., through their agents, servants and employees, designed, manufactured, distributed, sold, marketed, and placed into the stream of commerce the patch that was implanted in Plaintiff Ms. RISLEY's body. The patch was designed, manufactured, distributed, sold, marketed, and placed into the stream of commerce to be used by surgeons for hernia repair surgeries and was further represented by Defendants, and each of them, to be an appropriate, safe, suitable product for such purposes.

9. Defendants DAVOL, INC., and C.R. BARD, INC., submitted their 510K application to the Federal Drug Administration ("FDA") on January 22, 2001. Following this application, the Kugel Patch was authorized by the FDA as a Class II medical device.

10. On December 22, 2005, Defendants DAVOL, INC., and C.R. BARD, INC., issued a recall of many sizes of the Kugel Patch, including the size implanted in Plaintiff Ms. RISLEY's body. The recall was due to a faulty "memory recoil ring" that was known to break under stress or pressure, including the stress of implantation. The ring was also known to migrate in the

body. These defects were known to cause severe injuries including bowel perforation, bowel obstruction, intestinal fistulae, and infections. At the time of the recall, there had been numerous reports of injury and death caused by the defective patch.

11. Upon information and belief, DAVOL, INC., and C.R. BARD, INC., failed to comply with FDA application and reporting requirements.

12. Upon information and belief, DAVOL, INC., and C.R. BARD, INC., were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled, and before it was implanted in Plaintiff Ms. RISLEY.

13. Upon information and belief, DAVOL, INC., and C.R. BARD, INC., were aware of the defect in manufacture and design prior to their recall of the patch and prior to the implantation of the patch into Plaintiff Ms. RISLEY's body.

14. In the days that followed her May 5, 2005 surgery, plaintiff Ms. RISLEY developed abdominal tightness, hypotension, and respiratory difficulties. The surgeons operated again on or about May 8th, 2005, to rule out abdominal catastrophe. The surgeons found a grossly edematous bowel and increased intraabdominal pressure.

15. The following day the surgeons had to operate again after Ms. RISLEY failed to improve and in fact deteriorated even further. On or about May 9, 2005, a third surgery was performed wherein Ms. RISLEY's worsening condition necessitated a left hemicoloectomy and removal of her ovaries. Within days the doctors had to operate to repair a perforated bowel.

16. During the following days and months, Ms. RISLEY underwent approximately 30 procedures under general anesthesia to address abdominal fistulas, infections, and other complications.

17. Ms. RISLEY has suffered and will continue to suffer serious and severe physical pain and mental anguish.

18. Ms. RISLEY has suffered and will continue to suffer brain damage resulting in her inability to live a full and complete life. This includes her inability to fully participate in the lives of her children and husband and to provide household services that she used to provide.

19. Ms. RISLEY has suffered a loss of income and earning capacity.

20. Ms. RISLEY's husband, Plaintiff TRACY RISLEY , has suffered loss of consortium.

21. At all times relevant, Plaintiff TRACY RISLEY was and continues to be married to Plaintiff Ms. RISLEY.

## FRAUDULENT CONCEALMENT

22. Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by defendants when they had a duty to disclose those facts. They have kept Plaintiffs and others ignorant of vital information essential to her pursuit of these claims, without any fault or lack of diligence on plaintiff's part, for the purpose of obtaining delay on plaintiffs' part in filing a complaint on their causes of action. Their fraudulent concealment did result in such delay.

23. Plaintiffs could not reasonably have discovered the claims made herein until shortly before filing this complaint.

24. The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch that was implanted in Plaintiff Ms. RISLEY, but instead they concealed them. As a result, Defendants are estopped from relying on any statute of limitations defenses.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

25. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

26. Defendants DAVOL, INC., and C.R. BARD, INC., were negligent to Plaintiffs in the following respects:

27. DAVOL, INC. and C.R. BARD, INC., at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

28. DAVOL, INC. and C.R. BARD, INC. at all times mentioned knew, or in the exercise of reasonable care, should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch users.

29. DAVOL, INC. and C.R. BARD, INC. so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, failed to label, distributed, recommended, displayed, sold, examined, failed to examine, and supplied the Kugel Patch, that it was dangerous and unsafe for the use and purpose for which it was intended.

30. DAVOL, INC. and C.R. BARD, INC. were aware of the probable consequences of the Kugel Patch. DAVOL, INC. and C.R. BARD, INC. knew or should have known the Kugel Patch

would cause serious injury. They failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL, INC. and C.R. BARD, INC. willfully and deliberately failed to avoid those consequences, and in so doing, they acted in conscious disregard of the safety of Ms. RISLEY.

31. Defendants DAVOL, INC. and C.R. BARD, INC. owed a duty to Plaintiffs to adequately warn them and Ms. RISLEY's physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

32. Defendants DAVOL, INC. and C.R. BARD, INC. breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

33. As a direct and proximate result of the duties breached, the Kugel Patch used in Ms. RISLEY's hernia repair surgery failed, resulting in Ms. RISLEY suffering pain and harm.

34. As a direct and proximate result of Defendants' negligence, Ms. RISLEY has suffered injuries and damages.

35. Defendants DAVOL, INC. and C.R. BARD, INC. conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to, or a conscious disregard of, the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, INC. and C.R. BARD, INC. and others from similar conduct in the future.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY - FAILURE TO WARN

36. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

37. At all times herein mentioned, the Kugel Patch was designed and/or manufactured in a defective condition or manner, including but not limited to, causing users, consumers, and patients who would foreseeably come into contact with the Kugel Patch, including Ms. RISLEY, to be injured from said product. The defective and dangerous condition of the Kugel Patch existed at the time they were delivered by the manufacturer to the distributor. At the time Ms. RISLEY had her hernia repair surgery in which the Kugel Patch was implanted, the Patch was in the same condition as when it was manufactured, distributed, and sold.

38. Defendants failed to provide any warnings, labels or instructions of the Patch's dangerous propensities that were known or reasonably knowable at the time of distribution. The reasonably foreseeable use of the product involved significant dangers not readily obvious to the ordinary user of the product, including but not limited to rupture of the patch causing severe injuries including bowel perforation, bowel obstruction, recurring fistulas, and recurring infections which would require multiple subsequent surgeries.

39. At all times herein mentioned, the Plaintiff did not know of the defective condition, danger of breakage and the high risk of subsequent bodily injuries until on or about April 22, 2007 when Plaintiff and Plaintiff's husband heard about it in the media.

40. Plaintiff used the Kugel Patch in a normal, customary, and foreseeable manner as any consumer would and as it was intended to be used by Defendants.

41. Plaintiffs suffered the aforementioned injuries and damages as a direct and proximate result of Defendants' failure to warn.

42. The use of said product by Plaintiff as the product was intended involved a substantial danger that bowel and intestinal damage would occur. This substantial danger was not readily apparent to the Plaintiff.

43. The conduct of DAVOL, INC., and C.R. BARD, INC. in continuing to market, promote, sell, and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter. DAVOL, INC., C.R. BARD, INC. and other from similar conduct.

## THIRD CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY - MANUFACTURING and DESIGN DEFECT

44. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

45. Defendants DAVOL, INC. and C.R. BARD, INC. are strictly liable to Plaintiffs in the following respects:

46. Defendants C.R. BARD, INC. and DAVOL, INC., provided the Kugel Patch which was defectively manufactured. The patch was defective in that it contained a "memory recoil ring" which can and does break under the stress of placement. The ruptured recoil ring can cause perforation of the bowel, bowel obstruction, chronic intestinal fistulae, infection and

other unknown injury. This defect in the Kugel Patch caused it to fail while in Ms. RISLEY's body causing her to develop serious physical complications which required numerous subsequent painful surgeries and continuing complications.

47. At all times, when Defendants C.R. BARD and DAVOL, INC., sold this product, it was in a defective condition, unreasonably dangerous to Plaintiff Ms. RISLEY.

48. At all times mentioned, the Kugel Patch was in substantially the same condition as when it left the possession of the Defendants.

49. At all times mentioned, the Kugel Patch implanted into Ms. RISLEY was being used in a manner reasonably anticipated at the time it was implanted.

50. At all times relevant, Defendants, and each of them, knew this product was inherently dangerous for its intended use and was unreasonably dangerous constituting an unreasonable risk of injury to Ms. RISLEY as follows:

a. The Kugel Patch was sold in a defective condition by design and manufacture;

b. The Kugel Patch as designed and manufactured was unsafe to Ms. RISLEY;

c. The Kugel Patch as designed and manufactured was unreasonably dangerous to Ms. RISLEY;

d. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Ms. RISLEY would expect;

e. The Kugel Patch was unsafe for its intended use;

f. Defendants failed to warn the end user about the dangers and risks of the product;

g. Defendants knew the component parts of the Kugel Patch as implemented through

design and/or manufacture could cause injury to the end user.

h. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to during implantation or within the intra-abdominal space;

i. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of hernia repair surgery;

j. Any other acts or failures to act by DAVOL, INC. or C.R. BARD, INC. regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, promoting, distributing, and/or sale of the Kugel Patches as will be learned during discovery.

51. Defendants' conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge that the patch's were failing and not performing as represented and intended showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, INC. and C.R. BARD, INC. and others from similar conduct in the future.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

52. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

53. Defendants DAVOL, INC. and C.R. BARD, INC. are liable to Plaintiffs for their breach of implied warranty in the following respects:

54. Defendants sold the Kugel Patch which was implanted in Ms. RISLEY. Defendants impliedly warranted to Ms. RISLEY, her physicians and health care providers that the Kugel Patch was of merchantable quality and safe for the use for which it was intended.

55. Defendants knew or should have known that the Kugel Patch at the time of sale was intended for the purpose of surgically implanting it into the body for hernia repair.

56. Plaintiffs reasonably relied on Defendants' judgment, indications and statements that the Kugel Patch was fit for such use.

57. When the Kugel Patches were distributed into the stream of commerce and sold by Defendants, they were unsafe for their intended use, and not of merchantable quality, as warranted by Defendants in that they had very dangerous propensities when used as intended and implanted into the patient's body where they could cause serious injury of harm or death to the end user.

58. Ms. RISLEY suffered such injuries and damages as a result of the Defendants' conduct and actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek judgment against the Defendants, jointly and severally, for economic and non-economic damages in an amount as provided by law and to be determined by a jury; an award of attorney's fees and costs of suit as allowed by law; and such other legal and equitable relief as this Court may deem just and proper.

/

/

/

## JURY DEMAND

Plaintiffs request a trial by jury.

May 3, 2007

MULLIGAN & BANHAM

BY: ______________________

Elizabeth A. Banham Esq.
Attorney for Plaintiffs WENDY H. RISLEY
and TRACY A. RISLEY

**EXHIBIT D**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This Document Relates to:<br><br>Donald Alexander,<br><br>Plaintiff,<br><br>v. Civil No. 07-1129 (DWF/AJB)<br><br>Boston Scientific Corporation, Guidant Subsidiary of Boston Scientific Corporation, and St. Anthony's Medical Center,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER** |

---

Donald Alexander, 31057 Oak Ridge Drive, Rocky Mount, MO 65072, *pro se.*

Timothy A. Pratt, Esq., Deborah A. Moeller, Esq., and Julie R. Somora, Esq., Shook Hardy & Bacon, LLP, counsel for Defendants Boston Scientific Corporation and Guidant Subsidiary of Boston Scientific Corporation.

Douglas Ponder, Esq., Karen C. Moske, Esq., and V. Scott Williams, Esq., Hazelwood & Weber, LLC, counsel for Defendant St. Anthony's Medical Center.

---

The above-entitled matter is before the Court pursuant to Plaintiff Donald Alexander's Motion for Remand to St. Louis County Circuit Court and Defendant St. Anthony's Medical Center's ("St. Anthony's") Motion to Dismiss. For the reasons stated below, the Court grants Alexander's Motion for Remand as to Defendant

St. Anthony's, but denies the motion as to all remaining Defendants. The Court denies St. Anthony's Motion to Dismiss as moot.

## BACKGROUND

On May 25, 2006, Alexander was implanted with a Model 1291 Guidant pacemaker at St. Anthony's facilities. Alexander alleges that some of St. Anthony's nurses and staff assisted in the implant. Alexander also alleges that St. Anthony's paid for the pacemaker and included the charges for the pacemaker in Alexander's patient billing.

The Model 1291 device that was implanted in Alexander was manufactured in December 2005. Prior to its manufacture, on September 22, 2005, Guidant issued a recall regarding its Model 1291 Guidant pacemakers, among others. The recall was based on two failure modes.

As to the first failure mode, Guidant recommended that physicians "consider the projected low and declining failure rate in addition to the unique needs of individual patients in their medical decisions regarding patient management" and recommended "normal monitoring, as per device labeling." (Aff. of V. Scott Williams in Supp. of Def. St. Anthony's Mot. to Dismiss and Mem. of Law in Opp'n to Pl.'s Mot. for Remand ("Williams Aff.") at Ex. C.) In addition, Guidant stated, "As always, advise patients to seek attention immediately if they experience syncope or lightheadedness." (*Id.*) As to the second failure mode, Guidant recommended the following:

> Guidant recommends verifying pacemaker operation in the packaging prior to the implant procedure. Devices exhibiting intermittent or permanent loss or output or telemetry should not be implanted.

> Physicians should consider both the very low occurrence rate and that no failures have been observed after successful confirmation of pacing at implant, in addition to the unique needs of individual patients, in their medical decisions regarding patient management.

(Williams Aff. at Ex. C.)

Approximately two months later, on December 12, 2005, Guidant issued an "Advisory Update" that addressed the September 22, 2005 recall letter. There, Guidant explained the following:

> In March of 2004, Guidant discontinued shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to "Failure Mode 1."
>
> Guidant has recently discontinued shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to "Failure Mode 2." While Guidant recommends normal monitoring for patients implanted with these devices, Guidant representatives will retrieve and replace remaining hospital inventory with product free from susceptibility to "Mode 2" peri-implant failure.
>
> INSIGNIA and NEXUS devices currently being distributed by Guidant are not subject to either failure mode and therefore are not included in either recall.

(Williams Aff. at Ex. D.) Although Alexander's Model 1291 device was manufactured in December 2005, it is unclear whether the device was manufactured and shipped prior to this December 12, 2005 Advisory Update.

Approximately one month after Alexander's implant surgery, on June 23, 2006, Guidant issued a separate recall of the Model 1291. Thereafter, on July 7, 2006, Alexander received notice from the St. Louis Metro Heart Group that the specific Guidant pacemaker that was implanted in him had been recalled in connection with defective product concerns.

On July 25, 2006, Alexander filed this case against Defendants Boston Scientific Corporation ("BSC"), Guidant Subsidiary of Boston Scientific Corporation ("Guidant"), and St. Anthony's in the Circuit Court of St. Louis County, Missouri. It is undisputed that Alexander and St. Anthony's are both Missouri residents. Guidant is a citizen of Indiana and BSC is a citizen of Delaware and Massachusetts.

Alexander alleges that BSC and Guidant are liable for manufacturing and design defects and for the failure to warn patients of the alleged health risks and/or defects associated with certain Guidant implantable cardiac medical devices. Alexander alleges that St. Anthony's committed medical negligence because it knew or had reason to know that Alexander's Guidant device was potentially defective and because it did not advise Alexander or put Alexander on notice of these facts prior to implantation.

More specifically, Alexander alleges that:

> [p]rior to the actual implant surgery, both Guidant Corporation's said and physically present employee/agent and St. Anthony's Medical Center nursing staff or a designated St. Anthony's Medical Center employee/agent had the duty to disclose to Plaintiff that the Guidant pacemaker to be implanted in Plaintiff's chest is potentially defective and that a recall had been issued for Guidant pacemakers, model 1291 in September 2005 and that there existed a known manufacturing/assembly defect such that some unspecified percentage of Guidant pacemakers, model 1291, are known to be dangerously defective.
>
> 4. Both Guidant Corporation's said employee/agent and St. Anthony's Medical Center's staff employees attending to Plaintiff on May 25, 2006 breached the duty to disclose to Plaintiff that some unspecified percentage of Guidant pacemakers, model 1291, are know[n] to be dangerously defective, that several persons have died in connection with Guidant pacemakers, and that hundreds of product liability law suits are pending against Guidant Corporation.

(Williams Aff., Ex. B at 3-4.)

On August 25, 2006, BSC and Guidant removed the case to the United States District Court for the Eastern District of Missouri, Eastern Division, asserting that complete diversity exists because Alexander improperly joined St. Anthony's to defeat diversity jurisdiction. BSC and Guidant then filed a motion to stay all proceedings pending transfer of Alexander's case to the District of Minnesota as part of MDL No. 1708. The United States District Court for the Eastern District of Missouri granted the motion to stay and on February 7, 2007, the case was formally transferred to the District of Minnesota as part of MDL No. 1708.

On February 20, 2007, Alexander filed a Motion to Remand to St. Louis County Circuit Court, claiming that St. Anthony's is a proper defendant in the case and therefore complete diversity is lacking. On March 9, 2007, St. Anthony's filed a Motion to Dismiss, claiming that Alexander has failed to state a claim against St. Anthony's.

## I. Motion to Remand

The party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Generally, a state court action may only be removed if a federal district court would have original jurisdiction to hear the case. 28 U.S.C. § 1441(a).[1]

---

[1] Section 1441(a) provides in pertinent part:

> [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States.

28 U.S.C. § 1441(a).

Where the action is based upon diversity jurisdiction, it is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). "In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal." *In re Potash Antitrust Litig.*, 866 F. Supp. 406, 410 (D. Minn. 1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Alexander essentially argues that BCS and Guidant had no right to remove under 28 U.S.C. § 1441(a) because there is incomplete diversity of citizenship because St. Anthony's is a Missouri resident. Alexander therefore argues that because there is no original jurisdiction, under 28 U.S.C. § 1447(c) the case must be remanded.

Here, because St. Anthony's is a Missouri resident, the action on its face is not removable. Defendants assert, however, that removal was proper because Alexander fraudulently joined St. Anthony's to defeat diversity jurisdiction. Under the doctrine of fraudulent joinder, joinder of a party that is designed solely to deprive federal courts of jurisdiction is deemed fraudulent and does not prevent removal. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983). Fraudulent joinder does not require fraudulent intent; rather, fraudulent joinder exists if the plaintiff's claim against an in-state defendant has no chance of success. *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993); *see also Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809-10 (8th Cir. 2003) (stating that the Court must "determine whether there is a reasonable basis

for predicting that the state's law might impose liability against the defendant"); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendant."); *Anderson*, 724 F.2d at 84 ("Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant."). The burden is on the defendants to establish that a party has been fraudulently joined. *Schwenn*, 822 F. Supp. at 1455.

Guidant and BSC contend that the Court should find fraudulent joinder because Alexander failed to plead a cause of action against St. Anthony's. St. Anthony's similarly asserts that complete diversity exists because Alexander failed to state a claim against St. Anthony's. Specifically, Defendants assert that Alexander failed to plead any facts showing that St. Anthony's received the September 22, 2005 recall letter, and even if St. Anthony's did receive the letter, the letter did not instruct physicians to cease implantation of Model 1291 devices or ask for their return. In addition, Defendants assert that the December 12, 2005 Advisory Update states that the devices distributed after the recall letter were not subject to the recall, and therefore the device implanted in Alexander, which was manufactured in December 2005, was not subject to a recall on the date it was implanted.[2]

2 The Court notes that the December 12, 2005 Advisory Update actually states that "Guidant *has recently discontinued* shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to 'Failure Mode 2,'" and that "INSIGNIA and NEXUS devices *currently being distributed by Guidant* are not subject to either failure mode and therefore are not included in either recall." (Williams Aff. at Ex. D (emphasis added).)

(Footnote Continued on Next Page)

St. Anthony also asserts that it does not owe a duty to patients to report that the manufacturer of certain devices used in its facilities is a party to litigation regarding products that are not being used with that particular patient. And, St. Anthony asserts that because Alexander has not plead any facts demonstrating that anyone at St. Anthony's assumed a duty to inform him of risks associated with his device, contending that Missouri law requires such assumption, Alexander has failed to state a claim against St. Anthony's.[3]

Alexander, on the other hand, asserts that he has a cause of action against St. Anthony's based on his allegations that St. Anthony's knew that model 1291 pacemakers were known to be dangerously defective by May 25, 2006, and knew that Guidant had recalled model 1291 pacemakers eleven months prior to his implantation yet continued to market the units. Alexander asserts that despite this knowledge, St. Anthony's—acting through its employees/agents—selected a model 1291 Guidant pacemaker to be implanted into Alexander. Alexander alleges that, prior to his implantation, St. Anthony's concealed all of this information from him.

---

(Footnote Continued From Previous Page)
This does not necessarily indicate that the devices distributed after the September 22, 2005 letter were not subject to the recall, as the Advisory Update does not give specific dates as to when those specific devices were discontinued and as to when distribution stopped.

[3] BSC and Guidant also assert that to the extent Alexander's claim against St. Anthony's was a strict liability claim, the claim is foreclosed under Missouri law. Because Alexander concedes that his claim is not a strict liability claim, the Court does not address the issue here.

Alexander asserts that his allegations are supported by the fact that Guidant issued a recall regarding the model 1291 pacemakers on September 22, 2005, Guidant issued a separate recall regarding the model 1291 pacemakers within thirty days of his implantation, and as of the date of his implantation, hundreds of product liability lawsuits involving Guidant pacemakers were pending in state and federal courts. In addition, Alexander asserts that because "[St. Anthony's] is in the business of implanting pacemakers and defibrillators and routinely does business with manufacturers and distributors of implantable cardiac devices," St. Anthony's "would certainly know the quality history and dependability rating of manufacturers selected by [St. Anthony's] to supply pacemakers for implantation by [St. Anthony's]." (Pl.'s Resp. in Opp'n to Def. St. Anthony's Medical Center's Mot. to Dismiss and to Def.'s Opp'n to Pl.'s Mot. to Remand to St. Louis County Circuit Court at 2.)

The Court acknowledges that Alexander is proceeding *pro se*. *Pro se* pleadings are liberally construed and are held to less stringent standards than formal pleadings drafted by lawyers. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (stating *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers). Although BSC and Guidant contend that St. Anthony's failure to warn claims are without factual basis because it was "factually impossible" for St. Anthony's to have disclosed to Alexander that his device was potentially defective, the Court finds that, at this juncture, fact issues preclude the Court from finding that there is no basis for liability.

"[C]ontested issues of fact should be resolved in favor of the plaintiff." *Schwenn*, 822 F. Supp. at 1455. Alexander alleges in his Complaint, among other things, that "the medical center does business with Guidant Corporation on a regular basis and routinely invites Guidant Corporation employees/agents into its operating rooms during the implanting of Guidant pacemakers for programming purposes." (Williams Aff., Ex. B at 4-5.) At a minimum, Alexander has raised an issue as to whether St. Anthony's knew or had reason to know that Alexander's device was recalled and/or potentially defective in light of the publicity Guidant had received prior to Alexander's implantation regarding potentially defective devices.

"Joinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant." *Schwenn*, 822 F. Supp. at 1455. Here, Alexander's pleadings do allege facts, which if true, have a chance of success. At a minimum, in light of the liberal pleading requirements, the Court cannot conclude that no valid claims are brought against St. Anthony's as a matter of well-settled law. In addition, there is no evidence that St. Anthony's was singled out to avoid federal diversity jurisdiction rather than to obtain full relief. Accordingly, Alexander's joinder of St. Anthony's cannot be deemed fraudulent. Therefore, the Court concludes that because St. Anthony's was joined as a defendant, it lacks subject matter jurisdiction over this action as it currently stands.

**Sever and Remand**

To the extent the Court does find that St. Anthony's was not fraudulently joined, which the Court does find, BSC and Guidant alternatively request the Court to sever and remand Alexander's claims against St. Anthony's to state court and retain jurisdiction over Alexander's claims against BSC and Guidant. Specifically, BSC and Guidant assert that Alexander had fraudulently misjoined St. Anthony as a party, and therefore the claims against St. Anthony should be severed from the claims asserted against BSC and Guidant. BSC and Guidant contend that the claims arising out of St. Anthony's treatment do not arise out of the same transaction or occurrence as the claims against BSC and Guidant because the claims against St. Anthony's are based on medical negligence while the claims against BSC and Guidant are based on product liability. Alexander contends that his claims against St. Anthony's are not negated simply because his claims against BSC and Guidant are based on product liability. Alexander asserts that the Defendants' actions/inactions do arise out of the same transaction or occurrence.

The Federal Rules of Civil Procedure allow for permissive joinder of defendants as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(b).[4] If defendants have been misjoined for the failure to satisfy the conditions for permissive joinder under Rule 20(b), the Rules allow for severance of those defendants:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Upon review of the applicable rules and the pleadings of the parties, the Court finds that St. Anthony's has been improperly joined in this case. The joinder of the malpractice claim against St. Anthony's with the other product liability claims was inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability "arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(b). Any liability that may be found against either BSC/Guidant or St. Anthony's would not be a basis for liability as to the other. However, separate liability as to each could be separately found.

This finding is consistent with how joinder has been interpreted in Missouri. The Missouri Supreme Court, for example, has rejected the propriety of joining defendants involved in successive accidents. *State ex rel. Jinkerson v. Koehr*, 826 S.W.2d 346, 348 (Mo. 1992) (en banc). There, the plaintiffs alleged they were seriously injured as a result of the successive negligent acts or omissions of the defendants "in combination" and that

4 The Missouri rule on permissive joinder is nearly identical to the federal rule and is identical in all relevant parts here. *See* Mo. R. Civ. P. 52.05.

the two accidents "were not separate and distinct but inseparable and indistinguishable thereby creating common liability among all of the named defendants." *Id.* at 346, 348. The supreme court held that joinder was not permitted under Mo. R. Civ. P. 52.05(a) because the cause of action arising out of the two accidents did not arise out the same transaction or occurrence. Instead, "[e]ach defendant [was] responsible for the injuries caused in the accident in which he or she was involved." *Id.* at 348. In light of *Jinkerson*, the Court finds that it likely that the state court would find that Alexander did not have a reasonable basis for joining St. Anthony's under state procedural law and that Alexander should sue St. Anthony's under a separate state action.

Although some courts faced with fraudulent misjoinder claims have required both a finding of misjoinder and a finding of a bad faith attempt to defeat diversity, other courts have refused to apply the "egregious" standard when considering misjoinder in the context of remand petitions. *See In re: Baycol Products Litig.*, MDL No. 1431 (MJD), Case. No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (citing cases). The Eighth Circuit Court of Appeals has not addressed the issue.

Here, as the court in *Greene v. Wyeth* found, the Court "rejects the notion that Plaintiff[] ha[s] committed an egregious act or fraud upon the Court." 344 F. Supp. 2d 674, 685 (D. Nev. 2004). "[U]nder our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of *properly* joining a non[-]diverse defendant or a non[-]diverse co-plaintiff, he is free to do so." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)

(emphasis added). However, where a non-diverse party, such as St. Anthony's here, cannot be properly joined under the Federal Rules of Civil Procedure, other interests, such as the Defendants' statutory right of removal, prevail over that of permitting a plaintiff's choice of forum. *See Greene*, 344 F. Supp. 2d. at 685. Because the misjoinder of St. Anthony's would destroy complete diversity, and because the basis for the causes of action against St. Anthony's do not arise from the same transaction and occurrences as those in the causes of action against the other Defendants, the Court will sever the action against St. Anthony's so as to preserve BSC and Guidant's right to removal in the remaining action and to preserve the interests of judicial expediency and justice.

**II. Motion to Dismiss**

Because the Court concludes that the action against St. Anthony's shall be severed and remanded from the lawsuit, the Court denies St. Anthony's Motion to Dismiss as moot.

**IT IS HEREBY ORDERED** that:

1. Plaintiff Alexander's Motion for Remand to St. Louis County Circuit Court (MDL No. 05-1708 (DWF/AJB), Doc. No. 1258; Civil No. 07-1129 (DWF/AJB), Doc. No. 3) is **GRANTED** as to Defendant St. Anthony's Medical Center but **DENIED** as to all remaining Defendants. The Court Orders that all claims against Defendant St. Anthony's Medical Center are **SEVERED** and **REMANDED** to St. Louis County Circuit Court.

2. Defendant St. Anthony's Motion to Dismiss (MDL No. 05-1708 (DWF/AJB), Doc. No. 1308; Civil No. 07-1129 (DWF/AJB), Doc. No. 9) is **DENIED AS MOOT WITHOUT PREJUDICE.**

Dated: June 4, 2007

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

# PROOF OF SERVICE

(C.C.P. §§ 1013, 1013a, 2015.5)

**Case Name: PALMER vs. DAVOL INC., BARD DEVICES INC., and C.R. BARD, INC. et al.**

**Orange County Superior Court Case No. 00100114**

1. At the time of service I was over 18 years of age and not a party to this action.

2. My business address is Two Embarcadero Center, Suite 1800, San Francisco, CA 94111-3941.

3. On **February 27, 2008**, I served the following documents:

**NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT**

4. I served the documents on the **persons** below as follows:

Ramon Rossi Lopez, Esq.
Lopez McHugh LLP
100 Bayview Circle
North Tower, Suite 5600
Newport Beach, CA 92660

5. The documents were served by the following means (specify):

____ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening. The time of service was ________.

_X_ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 4 and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

____ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

____ **By messenger service.** I served the documents by placing them in an

envelope or package addressed to the persons at the addresses listed in item 4 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

____ **By fax transmission.** I faxed the documents to the person at the fax numbers listed in item 4. No error was reported by the fax machine that I used. .

____ **By e-mail or electronic transmission.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed in item 4. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: **February 27, 2008**

Esther Hom



P:\Wdocs\HBMAIN\03002\00054\00279821.DOC-22608